[Crminal No. 165.  Filed March 20, 1903.]

[71 Pac. 920.]

JOSEPH DENT, Defendant and Appellant, v. UNITED
STATES OF AMERICA, Plaintiff and Respondent.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—FOREST RESERVES—PRIVATE
USE—RULES AND REGULATIONS OF SECRETARY OF INTERIOR—INFRAC-
TION OF—NOT CRIMINAL—ACT OF CONGRESS, JUNE 4, 1897, 30 STATS.
33, UNCONSTITUTIONAL—ACT OF CONGRESS, JUNE 4, 1888, 25 STATS.
166, AMENDING REV. STATS. U. S. SEC. 5388, CITED.—The act of
Congress of June 4, 1897, *supra,* providing that the secretary of
the interior may make rules and regulations to regulate the occu-
pancy and use of forest reservations and to preserve the forests
thereon, and further providing that any violation of such rules
and regulations shall be punished as is provided for in the act
of Congress of June 4, 1888, amending section 5388 of the Revised
Statutes of the United States, is an unconstitutional delegation of
legislative power to the secretary of the interior in so far as it
authorizes him by rule or regulation to specify acts the performance
of which shall constitute crime.

2. SAME—SAME—SAME—SAME—SAME—CRIME—WHAT CONSTITUTES.—
It is not enough that the government may have the ownership of
the forest reserves, and that its unauthorized use for sheep-grazing
be a trespass.  There being no offenses against the government at
common law, special statutory enactment making the use an offense
must be had before a regulation of a department officer can make
such use a criminal act; and such a statutory enactment is not
to be found in a statute which gives such official the right to
make regulations for use, and provides for a punishment for the
infraction thereof, unless such use, except as allowed by the regu-
lations, is in terms prohibited.

APPEAL from a judgment of the District Court of the
Fourth Judicial District.  R. E. Sloan, Judge.  Reversed.

Judgment affirmed on rehearing, *post,* p. 413, 76 Pac. 455.

The facts are stated in the opinion.

E. M. Doe, and E. S. Clark, for Appellant.

F. S. Nave, United States Attorney, and J. H. Campbell,
Assistant United States Attorney, for Respondent.

A law will not be declared unconstitutional unless its vice is obvious. "If there is a doubt, the expressed will of the legislature will be sustained." *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Chicago and N. W. Ry. Co.* v. *Dey,* 35 Fed. 866, 1 L. R. A. 744.

It is fundamental that the functions of the legislature must be exercised by it alone, and cannot be delegated. "This, however, is true only in a qualified sense, and the qualifications are rapidly becoming larger. A marked tendency appears in the direction of assigning duties heretofore deemed legislative to other bodies." "There is no constitutional reason why legislative functions which are merely administrative or executive in their character should not be delegated to that branch of the government." "A distinction is drawn between the delegation of the power to make a law, involving necessarily discretion as to what it shall be, and a grant of authority relative to its execution, though the latter involves the exercise of discretion under and in pursuance of law." *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Georgia R. R. Co.* v. *Smith,* 70 Ga. 694; *Locke's Appeal,* 72 Pa. St. 491, 13 Am. Rep. 716; *Cincinnati etc. R. R. Co.* v. *Commissioners,* 1 Ohio St. 88.

The United States owns the public domain in every sense as a private owner. *Northern Pacific Ry. Co.* v. *Lewis,* 162 U. S. 366, 16 Sup. Ct. 831, 40 L. Ed. 1003; *United States* v. *Tygh Valley etc. Co.,* 76 Fed. 694; *United States* v. *Williams,* 6 Mont. 379, 12 Pac. 856.

By long acquiescence a license may be implied for the free use of the public lands by the people. *Buford* v. *Houtz,* 133 U. S. 322, 10 Sup. Ct. 305, 33 L. Ed. 619.

Such license does not ripen into an absolute right. The privilege may be revoked at any time. That is a necessary conclusion from the complete ownership, and from the fact that there is no such thing as an adverse user against the United States; nor does the statute of limitations run against the United States. This is fundamental and needs no citation of authorities. By the setting aside of a reservation from the public lands for any purpose, the land thus reserved becomes immediately severed from the mass of public lands, and is no longer open to the public for any purpose whatsoever except by the specific consent of Congress. *Wilcox* v. *Jackson,* 13. Pet. 498, 10 L. Ed. 264.

It is a proper delegation of power to place in the discretion of the President the reservation of the public lands. *Wilcox* v. *Jackson,* 13 Pet. 498, 10 L. Ed. 264.

Subsequent to such reservation any use of grasses or timber, or even the setting of foot upon such reserve, is trespass. *United States* v. *Tygh Valley etc. Co.,* 76 Fed. 694; *Northern Pacific Ry. Co.* v. *Lewis,* 162 U. S. 376, 16 Sup. Ct. 831, 40 L. Ed. 1003; *United States* v. *Williams,* 6 Mont. 379, 12 Pac. 856.

This applies in full force to the grazing of sheep on a public forest reserve. By the mere setting apart of a forest reserve by presidential proclamation under the act of Congress of March 3, 1891, the grazing of sheep thereon becomes such trespass as to entitle the United States to recover damages therefor. *United States* v. *Tygh Valley etc. Co.,* 76 Fed. 694.

To enact a law penalizing the use of such reservation unless such use be in compliance with rules and regulations to be prescribed by the secretary of the interior; and to authorize the secretary of the interior to make such rules and regulations, the infraction of which is expressly penalized by act of Congress, is not an unlawful delegation of power. *United States* v. *Ormsbee,* 74 Fed. 208; *United States* v. *Breen,* 40 Fed. 403; *United States* v. *Williams,* 6 Mont. 379, 12 Pac. 856; *United States* v. *City of Moline,* 82 Fed. 592; *E. A. Chatfield Co.* v. *City of New Haven,* 110 Fed. 788.

Such grant of power is clearly distinguished from an unlawful grant of power, in that Congress itself has defined what acts shall be unlawful, and has itself prescribed a penalty for unlawful acts, while the regulations which the secretary of the interior may make are administrative and in execution of, but not in conflict with, the law itself, and were "specifically authorized thereby and in effectuation of the legislation which created the offense." *In re Kollock,* 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; *United States* v. *Eaton,* 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294.

The principle of constitutional law forbidding the delegation of legislative power was never intended to have effect to prevent the enactment of a provision that a use or license given should be exercised under rules and regulations to be prescribed by the proper cabinet officer for the protection

of the property of the government. "It would be impossible for Congress to prescribe every detail governing the administration and management of every department of the government; and if it were possible it would not be wise." *United States* v. *Williams,* 6 Mont. 379, 12 Pac. 856.

"There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must, therefore, be subject to inquiry and determination outside of the halls of legislation." *Locke's Appeal,* 72 Pa. St. 491, 13 Am. Rep. 716.

These principles are applied to sustain the delegation to railroad commissioners of the power to determine freight and passenger tariffs and to determine what improvements and additions to the rolling stock, station-houses, and terminal facilities of railroads are reasonable and expedient. Penal statutes supporting such delegated powers are sustained. *Railroad Commissioners' Cases,* 116 U. S. 307, 6 Sup. Ct. 334, 348, 349-1191, 29 L. Ed. 636; *Reagan* v. *Farmers' Loan and Trust Co.,* 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1015; *Tilley* v. *Savannah etc. Ry. Co.,* 5 Fed. 641, 4 Woods, 427; *People* v. *Delaware etc. Canal Co.,* 32 App. Div. 120, 52 N. Y. Supp. 850; *Chicago and N. W. Ry. Co.* v. *Dey,* 35 Fed. 866, 1 L. R. A. 744.

KENT, C. J.—On the twenty-fifth day of March, 1902, in the district court of the fourth judicial district of Arizona, a grand jury of the United States presented an indictment against the appellant, charging him with the crime of "pasturing sheep on the public lands in a forest reservation." To this indictment the defendant filed a general demurrer, which was by the court overruled, and a plea of not guilty entered. A verdict of guilty was found by the jury upon the trial, and judgment was entered imposing a fine upon appellant. The appellant filed his motion for new trial and motion in arrest of judgment, each of which was by the court overruled. To all of said rulings appellant excepted, and has perfected and duly prosecuted his appeal to this court.

By the act of June 4, 1897, (30 Stats. 33, [U. S. Comp. Stats. 1901, p. 1540],) Congress provided that: "The secretary of the interior shall make provisions for the protection

against destruction by fire and depredations upon the public forests and forest reservations which may have been set aside, or which may be hereafter set aside, under the said act of March third, eighteen hundred and ninety-one [26 Stats. 1103; U. S. Comp. Stats. 1901, p. 1537], and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservation, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this act or such rules and regulations shall be punished as is provided for in the act of June fourth, eighteen hundred and eighty-eight, amending section fifty-three hundred and eighty-eight of the Revised Statutes of the United States [25 Stats. 166; U. S. Comp. Stats. 1901, p. 3649]. . . . Nothing herein shall be construed as prohibiting the egress or ingress of actual settlers residing within the same to and from their property or homes; and such wagon roads and other improvements may be constructed thereon as may be necessary to reach their homes and to utilize their property under such rules and regulations as may be prescribed by the secretary of the interior. Nor shall anything herein prohibit any person from entering upon such forest reservations for all proper and lawful purposes, including that of prospecting, locating and developing the mineral resources thereof: Provided, that such persons comply with the rules and regulations covering such forest reservation.'' Under this authority the secretary of the interior promulgated certain rules and regulations, among which was one prohibiting the pasturing of sheep on the public lands in a forest reservation, except by his express permission, in the manner in such rule and regulation provided. Under this act and upon this prohibition this indictment and prosecution were founded.

The question raised by this appeal is whether the provision of the statute above quoted is an unconstitutional delegation of legislative power to the secretary of the interior in so far as it authorizes him by rule or regulation to specify acts the performance of which shall constitute crime. It is, of course, a well-settled principle of constitutional law that the law-making power cannot delegate to the executive the power to make laws; that Congress cannot delegate to any of the

executive departments of the government its legislative power. The question to be considered here is whether this act does transfer to the secretary of the interior legislative power. To ascertain this the rule laid down by the supreme court of Ohio, and affirmed and approved by the supreme court of the United States, must be applied. It is stated as follows: "The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Cincinnati, Wilmington etc. R. R.* v. *Commissioners,* 1 Ohio St. 88; *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294. Is this, then, a delegation of authority to make the law, or a delegation of authority and discretion in carrying out the law? In the case of *Field* v. *Clark, supra,* the act of October 1, 1890, (26 Stats. 567,) was construed. That act permitted the free introduction into this country of certain articles, and provided that the President might, by proclamation, suspend such free entry when the country producing and exporting such articles should impose duties on products of this country which the President should deem reciprocally unequal and unreasonable. The court held that the act did not in any real sense invest the President with the power of legislation; that Congress prescribed in advance the duties to be levied, and that what the President was required to do was simply in execution of the act, and that he had no discretion in the matter except in respect to the declaration of the suspension of the act. The opinion of the court upon this question in that case was not, however, concurred in by the chief justice or Mr. Justice Lamar, it being their opinion that the acts to be performed by the President were, in effect, a transfer of legislative power to him.

In the case *In re Kollock,* 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, an act of Congress (24 Stats. 209 [U. S. Comp. Stats. 1901, p. 2228]), was under consideration, which imposed a revenue tax upon oleomargarine, prohibiting its sale in other than unused packages, and conferred upon the commissioner of internal revenue the duty of prescribing the marks, stamps, and brands to be affixed to the packages, and

made it a crime to sell the article without a payment of the tax, or in old packages, or without the prescribed marks and stamps. There the act itself fully defined the criminal offense, and the power conferred upon the commissioner was a matter of detail of administration. The court held the act valid, and not open to the objection that it was unconstitutional as a delegation of legislative power, the regulation being only supplemental to and in execution of the law itself.

In the case of *United States* v. *Eaton*, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, the defendant, a wholesale dealer in oleomargarine, was indicted under an act of Congress regulating the manufacture, sale, etc., of oleomargarine. That act contains several sections forbidding particular acts, and imposing in terms, in many of such sections, the penalties for violation of such acts. In section 5 [U. S. Comp. Stats. 1901, p. 2230], among other things, it was provided that every manufacturer of oleomargarine should keep such books and render such returns of material and products as the commissioner of internal revenue might require, but no penalty for a violation of or neglect to perform such acts was specifically contained in that section. There was no provision requiring such acts on the part of a wholesale dealer. Section 18 [U. S. Comp. Stats. 1901, p. 2234] provided that if any manufacturer of oleomargarine or any dealer therein should omit or neglect to do any of the things required by law to be done in the carrying on of his business or by the act prohibited, if there be no specific penalty or punishment imposed by any other section of the act for the neglect or omission, he should pay a certain penalty. Section 20 [U. S. Comp. Stats. 1901, p. 2234], provided that the commissioner might make all needful regulations for the carrying into effect of said act. The commissioner issued a regulation requiring a certain book to be kept by wholesale dealers for monthly returns, and upon the failure of the defendant to keep such book the indictment was based. That case differed from the one at bar in that there was no requirement for the wholesale dealer to do the acts required by the regulations of the commissioner, and no penalty for the infraction thereof was provided, the question in that case being whether the wholesale dealer in oleomargarine who had omitted to keep the book prescribed by the regulation made under authority of section 20 of the

act was liable to the penalty prescribed by section 18 as
having omitted or failed to do a thing ''required by law in
the carrying on or conducting of his business,'' within the
meaning of section 18.  The case is therefore not directly in
point, but the reasons given by the court in sustaining the
demurrer to the indictment are instructive, and we think ap-
plicable to the question here involved; and the opinion of the
court was quoted approvingly in the two cases which we
have previously referred to.  Said Mr. Justice Blatchford:
''Much more does this principle apply to a case where it is
sought substantially to prescribe a criminal offense by the
regulation of a department.  It is a principle of criminal law
that an offense which may be the subject of criminal procedure
is an act committed or omitted 'in violation of a public law,
either forbidding or commanding it.'  4 Am. & Eng. Ency.
of Law, 642; 4 Blackstone's Commentaries, 5.  It would be
a very dangerous principle to hold that a thing prescribed
by the commissioner of internal revenue as a needful regula-
tion under the oleomargarine act, for carrying it into effect,
could be considered as a thing 'required by law' in the carry-
ing on or conducting of the business of a wholesale dealer
in oleomargarine, in such manner as to become a criminal
offense punishable under paragraph 18 of the act; particu-
larly when the same act, in paragraph 5, requires a manufac-
turer of the article to keep such books and render such re-
turns as the commissioner of internal revenue, with the ap-
proval of the secretary of the treasury, may, by regulation,
require, and does not impose, in that section or elsewhere in
the act, the duty of keeping such books and rendering such
returns upon a wholesale dealer in the article.  It is necessary
that a sufficient statutory authority should exist for declaring
any act or omission a criminal offense; and we do not think
that the statutory authority in the present case is sufficient
If Congress intended to make it an offense for wholesale
dealers in oleomargarine to omit to keep books and render
returns as required by the regulations to be made by the
commissioner of internal revenue, it would have done so
distinctly, in connection with an enactment such as that above
recited, made in par. 41 of the act of October 1, 1890 [26
Stats. 567].  Regulations prescribed by the President and by
the heads of departments, under authority granted by Con-

VIII Ariz.—10

gress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense.''

In the case of *Payne* v. *United States,* 30 Wash. Law Rep. 791, 20 App. Cas. D. C. 606, the court of appeals of the District of Columbia has recently held that a special regulation of the postmaster-general limiting the class of publications entitled under the act of Congress to second-class rates was an unauthorized exercise of power, the discretion to be exercised by that official being, in the opinion of the court, limited to a question of identification merely of the publications included in the category prescribed by Congress, it not being competent for the postal department to impose additional requirements beyond those specified in the statute.

The precise question presented for our consideration has been passed upon in the federal district courts in the southern district of California, the northern district of California, the district of Washington, and the district of Utah; demurrers to similar indictments having been sustained in those four cases. In the case of *United States* v. *Dastervignes,* 118 Fed. 199, Judge Beatty, sitting in the circuit court for the northern district of California, held the regulation in question to be valid, and not a delegation to the secretary of a legislative power. It is to be noticed, however, that that case was a bill on the part of the government for an injunction restraining the defendants from pasturing their sheep on a reservation; and, while the learned judge in his opinion considers that a violation of the regulation would subject a defendant to punishment, the precise question here involved was not before the court for consideration, and it is conceived that in a civil action by the government for the protection of its property rights a different principle and different questions may be involved upon which the decision of that court may be sustained, and that the question discussed in the case may not have been necessarily involved.

We think the fatal defect of the act, so far as the question in the case at bar is concerned, is that unlimited power is

given thereby to the secretary of the interior to. determine what is and what is not a crime under the act. It is left to his discretion to determine the acts or omissions which shall render all persons amenable to the criminal law. The act does not prohibit the grazing of sheep on forest reserves, and there is no statute which prohibits it. Whether or not in all cases the authority of the several heads of the departments of the federal government to make regulations for their respective departments is limited to the precise and literal terms of the acts of Congress applicable thereto, we think that, in so far as by such regulations an act is defined to be a crime which is not so defined by any public law, and which, without such regulation, would not be a crime, or punishable as such, it is an exercise of lawmaking power, vested by the constitution, not in such official, but in Congress alone, and as such is unconstitutional.

It is strongly urged by counsel for the government that by setting apart this portion of the public lands as a forest reserve it is no longer open for public use; that any implied license for grazing that may have existed was thereby revoked, and that any entry upon the land is a trespass, except as it may be specifically authorized by the secretary; that the government may maintain an action to prevent a threatened trespass, or to recover damages for an accomplished trespass; that, this being so, and inasmuch as a civil remedy was not a sufficient protection for such forest reservation, Congress passed the act in question; that the act throughout proceeds in recognition of the fact that no person has a lawful right on a forest reservation, and modifies the then existing law to the extent that certain uses of the forest reservations may be had subject to the rules and regulations prescribed by the secretary of the interior, and further provides that any other use or an infraction of those rules shall be punished criminally as provided in section 5388 of the Revised Statutes; that the secretary does not prohibit the use of the forest reserve, for that use is already prohibited by the creation of the reserve; he merely declares the existing law in that respect when he prohibits the pasturing of sheep in the forest reserve; and that, as the act itself prescribes that a violation of the act or of such rules shall be punished, any use of the reservation not expressly granted by the secretary is a violation of the

law, and comes within the principle that the rules so promulgated have the force of law, so that persons violating the same are subject to criminal prosecution; and that the act is not a delegation of legislation, but authorizes merely regulations whereby the law may be carried into effect. And in addition to some of the cases we have referred to above, and various cases of timber cutting, we are cited to the cases of *United States* v. *Ormsbee* (D. C.), 74 Fed. 208, and *United States* v. *Breen* (C. C.), 40 Fed. 403.

In the case of *United States* v. *Ormsbee, supra,* the defendant was indicted for violating rules prescribed by the secretary of war in relation to the use of public waters and canals, and a motion to quash the indictment on the grounds here urged was denied. But in that case it appears that Congress had by enactment specifically prohibited any use such as the one in question, "unless approved and authorized by the secretary of war," and had made it the duty of the secretary to establish rules and regulations for the use, and had provided that any infraction of such rules should be a misdemeanor, punishable as in the act provided. The distinction between that case and the one at bar is therefore apparent, and it is the difference between the rightful and wrongful exercise of the legislative function. There the act of Congress made any use illegal except as authorized by the secretary by his rules, and made any infraction of the rules punishable. Here the act merely provides that the secretary may make rules for the use of the reservation, and makes any infraction of the rules punishable. The vital element is lacking, since the act does not prevent the use. In the one case, the use being made illegal by statute, the secretary's power is an exercise of administrative function; in the other, the use not being made illegal by statute, the secretary's functions are legislative, if an infraction of his rules constitutes a crime. It is not enough that the government may have the ownership of the reserve, and that its unauthorized use for sheep grazing be a trespass. There being no offenses against the government at common law, special statutory enactment making the use an offense must be had before a regulation of a department officer can make such use a criminal act; and such statutory enactment is not to be found in a statute which gives such official the right to make regulations for use, and

provides for a punishment for the infraction thereof, unless such use, except as allowed by the regulations, is in terms prohibited.

In the case of *United States* v. *Breen* (C. C.), 40 Fed. 402, by act Aug. 11, 1888 (25 Stat. 424), the secretary of war was authorized to make such regulations as should seem to him necessary to prevent any obstruction or injury to a certain channel in the Mississippi River, and the act provided that any violation of the regulation so made should be punished as therein provided. This was an act of a local nature, and the secretary's authority was clearly limited to promulgating regulations to carry into effect the prevention of the acts prohibited; and the court held that a regulation limiting the speed of vessels was valid, and upheld an indictment founded thereon.

The distinction between these cases and the case at bar is the distinction in a case often cited upon questions of this character,—*Locke's Appeal*, 72 Pa. 491, 13 Am. Rep. 716. "The legislature cannot delegate its power to make the law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." The same distinction is to be found in the cases arising under the statute relating to the cutting of timber on the public domain, so often before the courts in this part of the country. The use is specifically allowed by the act; the regulation of use merely is given to the department; hence, as was said in *United States* v. *Williams*, 6 Mont. 379, 12 Pac. 856, "The making of rules and regulations for the protection of timber . . . on the public lands does not trench upon the domain of the legislative department of the government." It is to be noted, further, that in the act under consideration not only is there no direct prohibition of use of the reservations, but their use for all proper and lawful purposes is specifically granted, subject only to the regulations of the secretary covering such reservation. It may be that Congress intended by this act to allow the secretary, in his discretion, to exercise such latitude by his regulations as to say that this or that man, in his discretion, should or should not pasture his sheep on the reservation, on the theory that such regulation, far-reaching though it might be in its effect, was within the general purpose of the

act in relation to the use and occupation of the reservation. Be this as it may, we do not think Congress may lawfully delegate its power so as to authorize the secretary to so specify by such regulation acts which shall constitute a crime, or that an indictment founded thereon can be sustained. This we believe to be the principle to be deduced from the cases in the supreme court of the United States to which we have referred.

The demurrer to the indictment should have been sustained, and the judgment is therefore reversed and the case remanded to the district court, with directions to enter judgment for the defendant.

Davis, J., and Doan, J., concur.