## In re FOLEY.

(District Court, E. D. Pennsylvania. August 26, 1905.)

### No. 1,750.

BANKRUPTCY—ACTS OF BANKRUPTCY—PREFERENTIAL PAYMENTS.

The payment by an insolvent saloonkeeper, at various times within four months prior to the filing of a petition in involuntary bankruptcy against him, of considerable sums of money to two creditors, in part on account of current expenses of his business and in part on account of antecedent debts, while another large creditor was paid nothing during such time, *held* to constitute a transfer of property with intent to prefer the creditors paid, and to be an act of bankruptcy, under Bankr. Act July 1, 1898, § 3a (2), 30 Stat. 546 [U. S. Comp. St. 1901. p. 3422].

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 72, 79.]

In Bankruptcy. On report of special referee.

The following is the report of the special referee:

To the Honorable Judges of the Said Court:

The undersigned respectfully reports:

That on the 7th day of October, 1903, James Simms and Henry Boylan, copartners trading under the firm name of James Simms & Co., doing business as wholesale liquor dealers at No. 227 Vine street, Philadelphia, filed their petition in your honorable court charging one John Foley with having transferred to two of his creditors large sums of money, and that at the time of such transfer he was insolvent; that, the transfer being within four months of the date of the filing of the petition, a preference was thereby given to other creditors over the petitioners, and therefore constituted an act of bankruptcy.

To this petition the said John Foley filed an answer, denying that he had committed the acts of bankruptcy set forth in said petition, and denying that he was insolvent.

The matter was thereupon referred by your honorable court to the late Byerly Hart, Esq., as special referee, to ascertain and report the facts, together with the testimony and his findings thereon. Voluminous testimony was taken before the said referee, but no report was ever made by him. By order of court, the record of this case was transferred to the undersigned, who from the pleadings and evidence finds as follows:

### Findings of Fact.

That the petitioners are James Simms and Henry Boylan, copartners, trading under the firm name of James Simms & Co., doing business as wholesale liquor dealers at No. 227 Vine street, in the city of Philadelphia.

That within six months previous to the filing of the petition against him John Foley, the alleged bankrupt, had his principal place of business at

the northeast corner of Twelfth and McKean streets, upon which property he has a lease at $40 per month which expires in June, 1907.

That the said Foley is now carrying on business as a retail liquor dealer, and is the owner and holder of a license to sell liquors at retail upon premises northeast corner of Twelfth and McKean streets, Philadelphia.

That the creditors of the said Foley are less than 12 in number. Among them are the petitioners, who have a judgment against him, entered on October 26, 1898, in the court of common pleas of Philadelphia county, for the sum of $2,250, to which judgment there are no set-offs or counter-claims, and nothing has been paid on account thereof, nor have the petitioners been able to collect anything on account of said judgment.

That the debts of the said alleged bankrupt amount to about $11,000, and the only assets he has besides the liquor license in question is the house in which he lives, No. 2,633 Bainbridge street, which, although assessed at $1,400, has a mortgage of $1,500 upon it.

That the value of the license in question is anywhere from $1,000 to $5,000, depending altogether on the competition of those who may want it.

That from a time within four months before the filing of the petition (October 7, 1903) down to December 9, 1903, the alleged bankrupt transferred to the Baltz Brewing Company $884.25 in cash, and to Angelo Myers $664.60 in cash, both creditors, but never paid anything to the petitioners on account of their judgment.

### Conclusions.

Upon the foregoing facts two questions are to be considered:

Was John Foley insolvent when he made the above-mentioned payments to creditors?

Do such payments constitute a preference of such creditors over the petitioners under the bankruptcy act?

Insolvency:

Section 1 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544, 545 [U. S. Comp. St. 1901, p. 3419]) defines insolvency (in subdivision 15) as follows: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property, he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

The debts of the bankrupt, according to his own testimony, amount to about $11,000. It is true the alleged bankrupt testified that he was solvent and that he had assets sufficient to pay all of his obligations; but a careful examination of his testimony will show that it is unreliable and untrustworthy all the way through. He claims an equity of $900 in a house which is assessed at $1,400 and which has a mortgage upon it of $1,500 and rents for only $15 a month. In one breath he values his license at $10,000, and in the very next he says that during 18 months prior to December, 1903, he made a profit from his business of only $100.

J. W. B. Doyle, who has been in the business of buying and selling retail saloons from the year 1900, was asked the following question: "If the conditions surrounding the sale of John Foley's place were normal, there being nothing unusual regarding them, and no unusual demand or desire for his place, what in your opinion is a fair price for the place?" Answer: "About $2,000." Freeman & Co. testified that most of the sales which they had made of retail liquor licenses were for less than $5,000. Foley is subject to a lease of his saloon property for $40 per month, running until June, 1907, which in itself is a liability.

In the opinion of the referee John Foley was hopelessly insolvent at the time the petition in bankruptcy was filed and at the time the acts complained of therein were committed.

Preference:

What constitutes a preference, within the meaning of the act? Section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), as amended, provides as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within

four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property; and the effect of the enforcement of such a judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The evidence clearly shows that during the four months prior to the filing of the petition on October 7, 1903, Foley transferred to one of his creditors, Angelo Myers, the sum of $377.76 in cash, and after the filing of the petition and before the adjudication he transferred to the same creditor $286.84 in cash; that during the time from June 17, 1903, to December 9, 1903, Foley paid to Angelo Myers the sum of $664.60 cash, which was the entire amount of the indebtedness of Foley to Myers during that time. So, within four months prior to the filing of the petition to December, 1903, Foley, while insolvent, transferred to the Baltz Brewing Company $884.25 in cash, and to Angelo Myers $664.60 in cash, both being creditors, while the petitioners never received anything on account of their judgment.

The question of law is whether the facts disclosed by the evidence constitute such a transfer of property as to give a preference under section 60a of the bankruptcy act.

Under the facts and law of this case the referee is of the opinion that John Foley having transferred unto two of his creditors large sums of money, the same being part of his property, while he was insolvent and within four months of the time of the filing of the petition, resulted in giving a preference to the creditors receiving such money, and therefore constituted acts of bankruptcy within the meaning of the act of 1898.

The referee therefore recommends to your honorable court that the said John Foley be adjudicated a bankrupt.

All of which is respectfully submitted.

Thomas Boylan, for petitioners.
William C. Gross, for alleged bankrupt.

J. B. McPHERSON, District Judge. The report of the special referee, Joseph Mellors, Esq., is entirely satisfactory, and I adopt it as the opinion of the court, merely adding that the testimony makes it clear that the disputed payments were not all on account of the current expenses of the business, but that some of them at least were payments of antecedent debts. These, therefore, were preferential, and fall clearly within the inhibition of the act. What effect should be given to these payments, if they had all been for the current expenses of the business, is a question that does not now arise.

The report of the special referee is affirmed, and the clerk is directed to enter an order of adjudication.