## UNITED STATES v. GRIMAUD et al.

(District Court, S. D. California, N. D. May 3, 1909.)

### No. 2.

1. WOODS AND FORESTS (§ 10\*) — FOREST RESERVATIONS—PENALTY FOR VIOLATION OF REGULATIONS—VALIDITY OF STATUTE.

   The provision of the sundry civil appropriation act of June 4, 1897, c. 2, § 1, 30 Stat. 35 (U. S. Comp. St. 1901, p. 1540), making it a criminal offense to violate any rule or regulation which should thereafter be made by the Secretary of the Interior under the power therein conferred (since transferred to the Secretary of Agriculture) for the protection and preservation of forest reservations, is void for lack of any designation or definition by Congress of any act which shall constitute an offense, which is essential to the creation of a crime against the United States.

   [Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 10.\*]

2. CONSTITUTIONAL LAW (§ 62\*) — DELEGATION OF LEGISLATIVE POWER—CREATION OF CRIMES.

   Such provision is also unconstitutional and void as an attempted delegation of legislative power to an executive officer, in that it leaves it to the Secretary to prescribe in his discretion what acts shall constitute crimes.

   [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 62.\*]

On Demurrer to Indictment.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. I. McCormick, U. S. Atty., and Frank Stewart, Asst. U. S. Atty.
W. W. Kaye, for defendants.

WELLBORN, District Judge.    The charge against defendants is
that of grazing sheep, without permission, in the Sierra Forest Re-
serve.

By act of Congress, approved June 4, 1897, entitled "An act making
appropriations for sundry civil expenses of the government for the
fiscal year 1897, and for other purposes" (Act June 4, 1897, c. 2, § 1,
30 Stat. 35 [U. S. Comp. St. 1901, p. 1540]), it is provided, among
other things, that:

"The Secretary of the Interior shall make provisions for the protection
against destruction by fire and depredations upon the public forests and forest
reservations which may have been set aside or which may be hereafter set
aside under the said act of March third, eighteen hundred and ninety-one, and
which may be continued; and he may make such rules and regulations and es-
tablish such service as will insure the objects of such reservations, namely, to
regulate their occupancy and use and to preserve the forests thereon from de-
struction; and any violation of the provisions of this act or such rules and
regulations shall be punished as is provided for in the act of June fourth,
eighteen hundred and eighty-eight, amending section fifty-three hundred and
eighty-eight of the Revised Statutes of the United States."

The jurisdiction of the Secretary of the Interior over forest re-
serves was subsequently transferred to the Secretary of Agriculture,
and, thereafter, on June 12, 1906, the latter official promulgated the
following:

"Regulation 45.    All persons must secure permits before grazing any stock
in a forest reserve, except the few head in actual use by prospectors, campers
and travelers, the milch or work animals not exceeding a total of six head
owned by bona fide settlers residing in or near a forest reserve, which are ex-
cepted, and require no permit."

A demurrer to the indictment has been interposed on the grounds
that the act of Congress above mentioned, so far as it attaches a pen-
alty to any violations of the rules and regulations thereafter to be
made by the Secretary of the Interior, is void, because it does not
completely or at all define the acts to be punished, and because it at-
tempts a delegation of legislative power to an executive officer.    These
two grounds will be considered in the order in which I have stated
them.

The Supreme Court of the United States has often declared, in un-
mistakable terms, that there can be no crime against the authority
of the United States except where the forbidden act is defined and
penalized by statute.    U. S. v. Hudson, 7 Cranch, 32, 3 L. Ed. 259;
U. S. v. Coolidge, 1 Wheat. 415, 4 L. Ed. 124; U. S. v. Britton, 108
U. S. 199, 206, 2 Sup. Ct. 531, 27 L. Ed. 698; U. S. v. Eaton, 144
U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591.    And the Circuit Court
of Appeals for this circuit has spoken in decided terms to the same
effect.    Peters v. United States, 94 Fed. 127, 131, 36 C. C. A. 105.

In United States v. Hudson, supra, where it is held that the courts
of the United States have no common-law jurisdiction in criminal
cases, the Supreme Court uses the following language:

"The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of the offense."

In Peters v. United States, supra, the court says:

"It must be borne in mind that the national courts do not resort to common law as a source of criminal jurisdiction. Crimes and offenses cognizable under the authority of the United States can only be such as are expressly designated by law. It devolves upon Congress to define what are crimes, to fix the proper punishment; and to confer jurisdiction for their trial. U. S. v. Walsh, 5 Dill. 60, Fed. Cas. No. 16.636; U. S. v. Martin. 4 Cliff. 156, Fed. Cas. No. 15,728; In re Greene (C. C.) 52 Fed. 101; Swift v. Railroad Co. (C. C.) 64 Fed. 59; U. S. v. Hudson, 7 Cranch. 32, 3 L. Ed. 259; U. S. v. Coolidge, 1 Wheat. 415, 4 L. Ed. 124; U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698."

The same doctrine has been elsewhere declared as follows:

"In the consideration of this indictment it should be borne in mind that there are no common-law offenses against the United States; that the federal courts cannot resort to the common law as a source of criminal jurisdiction; that crimes and offenses, cognizable under the authority of the United States, are such, and only such, as are expressly designated by law; and that Congress must define these crimes, fix their punishment, and confer jurisdiction to try them." In re Greene (C. C.) 52 Fed. 104, 111.

There can be no pretense that Congress itself has defined as a crime the act for which defendants are here indicted, namely, grazing sheep, without permission, in a forest reserve. The statute itself does not forbid or make any reference whatever to sheep grazing, nor in the remotest degree suggest that Congress had it at all in mind, and, according to the government's own theory, it did not become a crime until nine years after the passage of the statute, which the government claims made it criminal, and then only because of the promulgation of an administrative rule which it contravenes. The mere statement of the theory, it seems to me, condemns it, and, after much reflection, I have now no hesitancy in holding that the statute, in so far as it affixes punishment to infractions of executive rules and regulations thereafter to be promulgated, is incomplete and wholly inadequate to form the basis of a criminal prosecution.

It must be borne in mind that part of a statute may be unconstitutional and void, and the residue constitutional and valid (28 Am. & Eng. Ency. of Law [2d Ed.] p. 570), and that there is no controversy here over the validity of any part of the act of Congress in question except the provision specifically indicated. That provision was not before the court in Dastervignes v. United States, 122 Fed. 30, 58 C. C. A. 346, and although it is mentioned, by way of recital, in the syllabus, there is not the slightest reference to it in the opinion, nor anything whatever to show or suggest its pertinency. Indeed, the question could not have arisen there, because the case was not a criminal prosecution, involving, and which alone could involve, the matter of punishment, but simply a civil suit to enjoin grazing, and to which suit the penalty clause of the statute had no possible relation or pertinency. The court specifically points out that part of the act which was before it, and held to be constitutional, as follows, underscoring mine:

"It must be admitted that the legislative authority of the United States is vested in Congress, and that Congress has no authority to delegate legislative power to the Secretary of the Interior, or to any administrative officer the authority to make laws; and if the act of Congress approved June 4, 1897 (chapter 2, § 1, 30 Stat. 35, U. S. Comp. St. 1901, p. 1540), is legally susceptible of the construction contended for by appellants, it would clearly be unconstitutional.   By that act the Secretary of the Interior was authorized to 'make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction.' Does this language delegate any power to the Secretary of the Interior to make a law, or does it simply confer upon the Secretary an authority to adopt such rules and regulations as to him may seem fit and proper in order to secure the objects for which the reservation was created, and such acts to be exercised under and in pursuance of the law enacted by Congress? Let us see.   Congress cannot delegate its power to make a law; but it can make a law to delegate a power to an administrative officer to determine a fact or condition of affairs in regard to which the law makes its own action depend."

The court nowhere holds, or intimates, that the statute is complete or valid in so far as it attempts to punish such acts as might thereafter be forbidden by the Secretary of the Interior; but it may be fairly inferred that the court would have held to the contrary, if the question had been presented, from the following expressions at page 34 of 122 Fed., at page 350 of 58 C. C. A., underscoring mine:

"The Secretary, by adopting this rule, acted simply as the arm that carries out the legislative will.   He did not invade any of the functions of Congress. He did not make any law, but he exercised the authority given to him, and made rules to preserve the forests on the reservation from destruction. Such rules, within constitutional limits, have the force and effect of law, and it is the duty of courts to protect and enforce them in order to uphold the law as enacted by Congress."

This declaration, clear and emphatic, that executive rules are not laws, taken in connection with the elementary principle, already adverted to, that nothing but a law can define or create a crime, absolutely determines the incompleteness and inadequacy of said act of Congress as a penal statute.

Nor is the case of Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523, applicable here.   The statute there involved declares the maintenance, after notice from the Secretary of War, of any bridge which unreasonably obstructs free navigation, to be a misdemeanor, punishable by a fine not exceeding $5,000, and, furthermore, in substance and effect, though not in terms, makes the final order of the Secretary, for which it provides, conclusive evidence as to the fact of unreasonableness.   Act March 3, 1899, c. 425, § 18, 30 Stat. 1153 (U. S. Comp. St. 1901, p. 3545).

This statute, it will be seen, fully defines the crime and affixes the punishment, and is, therefore, complete within itself.   Its only peculiarity is that, as I have already indicated, it impliedly establishes in that class of cases a special rule of evidence.   This, however, is clearly within the scope of legislative power, and not unfrequently done, either by implication, as above shown, or in express terms, as appears from the instance below cited.   Thus, section 16 of the act of Congress approved August 6, 1846 (chapter 90, 9 Stat. 63 [U. S. Comp. St. 1901, p. 3706]), entitled "An act to provide for the better

organization of the treasury," etc., contains a provision, subsequently embodied in section 5494 of the Revised Statutes, which reads as follows:

"Upon the trial of any indictment against any person for embezzling public money under the provisions of the six preceding sections, it shall be sufficient evidence, for the purpose of showing a balance against such person, to produce a transcript from the books and proceedings of the treasury, as required in civil cases, under the provisions for the settlement of accounts between the United States and receivers of public money." Section 5494, Rev. St. U. S.; Act Aug. 6, 1846, c. 90, § 16, 9 Stat. 63 (U. S. Comp. St. 1901, p. 3706).

Examples to the same effect might be multiplied, but the one just referred to sufficiently illustrates the exercise of legislative power in the matter of special procedure.

While the conclusion which I have above announced as to the incompleteness of the statute here in question disposes of this case favorably to the defendants, yet, inasmuch as the other ground of the demurrer is the one most largely, if not wholly, discussed in the briefs, and touches closely a principle of high moment, I shall give it hurried consideration. There is no feature of our government more distinctive or beneficent than the division of its powers into separate departments, and, therefore, the rule which confines the making of laws to Congress is at once elementary and inflexible. Concerning this rule, the Supreme Court of the United States has made the following declaration:

"That Congress cannot delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." Field v. Clark, 143 U. S. 650, 692, 12 Sup. Ct. 495, 36 L. Ed. 294.

There can be no controversy whatever about the principle itself; the only room for dispute lies in its application. In the case at bar, the statute does not declare the grazing of sheep, without permission, to be a crime, nor does it make the slightest reference to that matter, but declares that whatever the Secretary of the Interior may thereafter prohibit shall be a misdemeanor. Congress merely prescribes a penalty, and then leaves it to the Secretary of the Interior to determine what acts shall be so punishable. Thus it will be seen that the very essence of the alleged crime, namely, what act shall constitute it, is not fixed by Congress, but wholly confided to the discretion of an administrative officer. If this does not necessarily involve a delegation of legislative power, it is difficult to conceive of a statute challengeable on that ground.

While arguments ab inconvenienti of themselves are rarely conclusive, yet in many cases they are entitled to much weight, and this is one of the cases; for, if the contentions which the government here urges were to prevail, Congress, so far as any legal difficulties are concerned, could easily abdicate in favor of the executive department practically all its powers. To illustrate: Among the large number of crimes relating to the postal service is the use of the mails for immoral and fraudulent purposes. Congress could repeal existing legislation on this subject, and, by a new law, authorize and require the Postmaster General to protect the mails against immoral and fraudu-

lent uses by suitable rules and regulations, and further provide that any violations of such rules and regulations should be punished in a specified manner, and, under this grant of authority, said officer could occupy with regulations, springing from his own discretion and will, but enforceable through penal sanctions, the large field now covered by the criminal laws on that subject, and in this way it would be possible to confer upon the administrative branches of the government powers whose full exercise would substitute with penalized rules well-nigh the whole volume of federal criminal law. It is needless to add that no reasonable interpretation of the Constitution will admit of such a startling result.

This precise question has been under review and ably discussed in another jurisdiction, as follows:

"It is fundamental that the citizen has the right to rely upon the statutes of the United States for the ascertainment of the acts which constitute an infraction of its laws. This principle was expressed by the Supreme Court in Re Kollock, 165 U. S. 533, 17 Sup. Ct. 446, 41 L. Ed. 813, as follows: 'We agree that the courts of the United States, in determining what constitutes an offense against the United States, must resort to the statutes of the United States, enacted in pursuance of the Constitution.'

"A citizen desiring to obey the laws would search the acts of Congress in vain to find that grazing sheep upon a forest reserve without the permit of the Secretary of Agriculture is a criminal offense. It has been suggested that the acts under which the indictment is drawn give notice that the Secretary may make rules and regulations, and that the search would not be complete and the inquiry concluded until it be ascertained whether he has made any rules and regulations, the violation of which it is expressly declared shall be a criminal offense. But here we are led back to the delegation of legislative power. The rules prescribed by the heads of departments are not necessarily promulgated. While they may be procured, they are not as easily available as are the statutes of the United States; nor does our system contemplate an examination of those rules for the ascertainment of that which may or may not be a crime, for the right to prohibit a given thing under penalty belongs to Congress alone. * * *

"In discussing the statute, the Supreme Court laid down this wholesome doctrine: 'Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. It is a principle of criminal law that an offense which may be the subject of criminal procedure is an act committed or omitted "in violation of a public law, either forbidding or commanding it." 4 American & English Encyclopedia of Law, 642; 4 Bl. Com. 5. It would be a very dangerous principle to hold that a thing prescribed by the Commissioner of Internal Revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing "required by law" in carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offense punishable under section 18 of the act. * * * It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offense, and we do not think that the statutory authority in the present case is sufficient.'

"To like effect are United States v. Maid (D. C.) 116 Fed. 650, and United States v. Blasingame (D. C.) 116 Fed. 654.

"Have we here a case involving the delegation of legislative power? That Congress intended to punish by penalty made certain the violations of regulations made by the Secretary of Agriculture, and to declare the same a criminal offense, is beyond controversy. But the grazing of stock upon the forest reserves has not been prohibited by any congressional act. The prohibition rests entirely upon regulations made by the Secretary. Regulation No. 9 prescribes, as we have seen, that all persons before grazing sheep in a forest reserve must secure a permit, and any person responsible for grazing the same without a permit becomes a violator of the law; that is, whoever violates a rule pro-

mulgated by the Secretary violates a law passed by Congress. The evident embarrassment attending the making of regulation 9, in an attempt to bring it within the act of Congress, is apparent by the language used. Clearly there was a keen appreciation of the necessity of supplying that which Congress had failed to enact, and this was attempted by the use of the words 'is liable to punishment for violation of the law.' At times the line is somewhat indistinct between that which constitutes the delegation of legislative power and the delegation of administrative authority.

"This case does not fall within the rule so well explained and amplified by the authorities that the executive branch of the government may make proper rules and regulations for carrying into effect the legislative will of Congress. The President may be authorized to declare by proclamation that a law shall go into effect upon the happening of a certain contingency. The Secretary of the Treasury may make rules and regulations for the enforcement of the revenue statutes and the like. So may the heads of all the departments make like regulations, but the authority to do so must be expressly delegated, and the law must be complete in itself. The rules and regulations may only be prescribed for carrying out what Congress has expressly declared to be the law. Such powers do not pertain to the legislative functions, but are referable to administrative duties. Congress cannot leave a statute to be enlarged upon either by the courts or the executive department. It cannot authorize any other branch of the government to define that which is purely legislative, and that is purely legislative which defines rights, permits things to be done, or prohibits the doing thereof. Certainly, here, it is the Secretary of Agriculture who has undertaken to enact this law. He it is who has designated that which constitutes the crime. The thing prohibited, the thing for which the party is to be punished, the act which is the offense, is prescribed by the Secretary, and not enacted by Congress. As we have seen, this cannot be done.

"The objection to the indictment is the absence of a law defining the act therein charged as a criminal offense. Upon that ground the demurrer must be sustained, and the defendant discharged." United States v. Matthews (D. C.) 146 Fed. 306, 308.

See, also, United States v. Maid (D. C.) 116 Fed. 650, and United States v. Blasingame (D. C.) 116 Fed. 654.

In the former of said cases, at page 652, it is said:

"There is another aspect of the case, however, which furnishes as strong an argument against plaintiff's contention as the one just considered, and it is this: A department regulation may have the force of law in a civil suit to determine property rights, as in Cosmos Exploration Co. v. Gray Eagle Oil Co., supra ([C. C.] 104 Fed. 45; Id., 112 Fed. 4, 50 C. C. A. 79), and yet be ineffectual as the basis of a criminal prosecution. U. S. v. Eaton, supra. The Supreme Court of the United States, in the case last cited, marks the distinction thus:

"'Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as to lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do this thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense.'

"The obvious ground of said distinction is that to make an act a criminal offense is essentially an exercise of legislative power, which cannot be delegated, while the prescribing by the President or head of a department, thereunto duly authorized, of a rule, without penal sanctions, to carry into effect what Congress has enacted, although such rule may be as efficacious and binding as though it were a public law, is not a legislative, but ministerial function."

In the latter of said cases, United States v. Blasingame (D. C.) 116 Fed. 654, the opinion is brief, and as follows:

"I am of opinion that the act (Act June 4, 1897, c. 2, 30 Stat. 11) entitled 'An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-eight, and for other purposes,' in so far as it declares to be a crime any violation of the rules and regulations thereafter to be made by the Secretary of the Interior for the protection of forest reservations. is in substance and effect a delegation of legislative power to an administrative officer. While the Supreme Court of the United States, in Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, and also in Re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, held that there was no unconstitutional delegation of power in either case, yet, applying and observing here the principles and distinctions there enunciated and recognized, it is impossible to escape the conclusion which I have announced. U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, although not precisely like the case at bar, may also be aptly cited in support of said conclusion. Clear statements and pertinent applications of the doctrine announced by the Supreme Court of the United States in the two cases first above cited, that legislative power can be exercised only by that branch of the government to which the Constitution commits it, will be found in People v. Parks, 58 Cal. 624, Ex parte Cox, 63 Cal. 21, and Board of Harbor Com'rs v. Excelsior Redwood Co., 88 Cal. 491, 26 Pac. 375, 22 Am. St. Rep. 321."

I have given to the extract quoted in plaintiffs' brief from an opinion by former Attorney General Griggs that respectful attention which the high character and distinguished ability of its writer, as well as the great office he then held, demands, and can but think that the quotation rests upon a superficial view of the subject. (For the full quotation see footnote at bottom of page.) It starts out with an assumption, which, to my mind, is manifestly erroneous, namely, that:

"The statute proclaims the punishment for an offense which in general terms is defined by law, the regulation dealing only with a matter of detail and administration, necessary to carry into effect the object of the law."

The statute—and I refer, of course, only to that provision now under consideration—so far from proclaiming the punishment for an offense which in general terms is defined by law, does not even pur-

---

"But here the statute proclaims the punishment for an offense which in general terms is defined by law, the regulation dealing only with a matter of detail and administration necessary to carry into effect the object of the law. The protection of the public forests is intrusted to the Secretary of the Interior. Section 5388, Rev. St. (U. S. Comp. St. 1901, p. 3649), makes it an offense, punishable by fine and imprisonment, for any person wantonly to destroy any timber on a public reservation. In furtherance of this policy, the act of June 4, 1897, directs the Secretary to make provision for the protection of the forests and authorizes him to regulate the use and occupancy of the forest reservations and to preserve the forests thereon from destruction, making for such purpose appropriate rules and regulations. Any violation of such rules and regulations is, by the statute, made an offense, punishable as provided in section 5388. * * * It seems to me Congress has a right to do this. Suppose Congress had provided that the occupation or use of a forest reservation by any person, without permission of the Secretary, should be a misdemeanor. Would this not be a valid exercise of legislative power? The present statute does no more. The regulation is reasonable and necessary. It restrains no one in the enjoyment of any natural or legal right. To use the language of Mr. Chief Justice Fuller, in Re Kollock, 165 U. S. 526, 533, 17 Sup. Ct. 444, 446, 41 L. Ed. 813: 'The regulation was in execution of, or supplementary to, but not in conflict with, the law itself, and was specifically authorized thereby in effectuation of the legislation which created the offense.'" 22 Opinions Attorneys General, 267.

port to punish a transgression of law, but the prescribed penalty is affixed to the violation of such rules as the Secretary in his discretion might subsequently make, and which in fact, as I have already indicated, were not made until nine years after the statute was enacted. Again, the quotation:

"Suppose Congress had provided that the occupation or use of a forest reservation by any person, without permission of the Secretary, should be a misdemeanor, would this not be a valid exercise of legislative power?"

The answer to this question must be in the affirmative, because, in the case supposed, the statute is complete within itself. The legislative power has been duly exercised in prescribing the act which constitutes the crime; but, when the quotation goes on to add, "The present statute does no more," another erroneous postulate, as it seems to me, is assumed. Congress has nowhere declared that the grazing of sheep in a forest reservation without permission of the Secretary is a misdemeanor, but the alleged crime results only from the joint operation of the statute and a rule subsequently made by the Secretary. Without the rule there is nothing to which the penalty can attach, and, in order to charge the so-called crime, it is necessary, as has been done here, to allege the promulgation and infraction of the rule, without which the statute is wholly devoid of force or effect.

The cases mainly relied on by the government are Dastervignes v. United States and Union Bridge Company v. United States, supra. In the former, as I have already shown, the penalty clause of the statute was not before the court, and, besides, there are views expressed in the opinion utterly incompatible with the constitutionality of said clause, and that case, therefore, so far as applicable at all, is against, rather than favorable to, the government's claim. In the other case, Union Bridge Company v. United States, the crime was fully defined, and the punishment fixed by the statute, and the duties devolved upon the Secretary of War were only administrative acts in aid of the execution of the statute. In its opinion (at page 382 of 204 U. S., at page 372 of 27 Sup. Ct. [51 L. Ed. 523]), the court quotes approvingly from a prior decision, Field v. Clark, as follows:

"'He was the mere agent of the lawmaking department to ascertain and declare the event upon which its expressed will was to take effect. It was a part of the law itself as it left the hands of Congress that the provisions, full and complete in themselves, permitting the free introduction of sugars, molasses, coffee, tea, and hides, from particular countries, should be suspended in a given contingency, and that in case of such suspensions certain duties should be imposed.' Again: 'The true distinction,' as Judge Ranney, speaking for the Supreme Court of Ohio, has well said, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' Cincinnati, Wilmington, etc., Railroad v. Commissioners, 1 Ohio St. 77."

Again (at page 385 of 204 U. S., at page 374 of 27 Sup. Ct. [51 L. Ed. 523]) the court says:

"As appropriate to the object to be accomplished, as a means to an end within the power of the national government, Congress, in execution of a declared policy, committed to the Secretary of War the duty of ascertaining all the facts essential in any inquiry whether particular bridges over the water-

ways of the United States were unreasonable obstructions to free navigation. Beyond question, if it had so elected, Congress, in some effective mode and without previous investigation through executive officers, could have determined for itself, primarily, the fact whether the bridge here in question was an unreasonable obstruction to navigation, and, if it was found to be of that character, could by direct legislation have required the defendant to make such alterations of its bridge as were requisite for the protection of navigation and commerce over the waterway in question. But investigations by Congress as to each particular bridge alleged to constitute an unreasonable obstruction to free navigation and direct legislation covering each case separately would be impracticable, in view of the vast and varied interests which require national legislation from time to time. By the statute in question Congress declared in effect that navigation should be freed from unreasonable obstructions arising from bridges of insufficient height, width of span, or other defects. It stopped, however, with this declaration of a general rule, and imposed upon the Secretary of War the duty of ascertaining what particular cases came within the rule prescribed by Congress. as well as the duty of enforcing the rule in such cases. In performing that duty the Secretary of War will only execute the clearly expressed will of Congress, and will not, in any true sense, exert legislative or judicial power."

There the crime was created—that is, it was defined and the punishment affixed by the statute itself—and, as above stated, the duties which the statute devolved upon the Secretary of War were only in aid of its enforcement.

If I am correct in the views which I have expressed of the Dastervignes Case, then two of the other cases relied on by the government, United States v. DeGuierre (D. C.) 152 Fed. 568, and Dent v. United States, 8 Ariz. 413, 76 Pac. 455, are unfavorable to its contention, because, in each, a contrary decision was overruled, solely on the authority and under a mistaken apprehension of the Dastervignes Case, indicating that both of said courts, if uncontrolled by the Dastervignes Case, would hold the statute void. On the first hearing in the latter case, Dent v. United States, 8 Ariz. 138, 146, 71 Pac. 920, 922, the opinion is elaborate, able, and convincing, and, with uncommon force and clearness, compresses into a single paragraph its unanswerable argument, as follows:

"We think the fatal defect of the act, so far as the question in the case at bar is concerned, is that unlimited power is given thereby to the Secretary of the Interior to determine what is and what is not a crime under the act. It is left to his discretion to determine the acts or omissions which shall render all persons amenable to the criminal law. The act does not prohibit the grazing of sheep on forest reserves, and there is no statute which prohibits it. Whether or not in all cases the authority of the several heads of the departments of the federal government to make regulations for their respective departments is limited to the precise and. literal terms of the acts of Congress applicable thereto, we think that, in so far as by such regulations an act is defined to be a crime which is not so defined by any public law, and which, without such regulation, would not be a crime or punishable as such, it is an exercise of lawmaking power, vested by the Constitution, not in such official, but in Congress alone, and as such is unconstitutional."

In most, if not all, of the cases relied upon by the government, the authority delegated was limited to the ascertainment of facts in particular cases, and these were held to be administrative acts. In the case at bar, however, there is no pretense that the Secretary of Agriculture has been charged with the duty, or has acted in the ascertainment of the facts of particular cases, but what he has undertaken to

do is to determine and define a crime, which, according to all the authorities, is a matter of legislative discretion.

In United States v. Shannon (C. C.) 151 Fed. 863, 865, the court says:

"Let us remember that we are not now dealing with a question of a regulation by the Secretary of the Interior, which makes a violation thereof a crime. Were such the point of inquiry, principles not necessarily here applicable would have to be discussed. United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; United States v. Matthews (D. C.) 146 Fed. 306. We can therefore eliminate any question of the liberty of the citizen, and proceed to inquire into the matter of the policy of the state concerning cattle growers, to ascertain the force of that policy in the present instance."

From this it appears that the court, in the last case, was careful to avoid any expression which might be applied to the question here under consideration.

Plaintiff, in its brief, advances the proposition that "The government, in dealing with forest reservations, is acting not only in its sovereign capacity, but as a landed proprietor," and seeks to draw therefrom the inference, that trespasses upon such reservations become crimes without legislation to that effect. This inference, to my mind, is obviously a non sequitur. The fact that the government may be endeavoring to protect its own lands in no way affects the vital principle of our Constitution, as it is distinctively called by the Supreme Court, which forbids the delegation of legislative power.

In the clause quoted in plaintiff's brief with emphasis from Camfield v. United States, 167 U. S. 518, 525, 17 Sup. Ct. 864, 867, 42 L. Ed. 260, "If the act be construed as applying only to fences actually erected upon public lands, it is manifestly unnecessary, since the government as an ordinary proprietor would have the right to prosecute for such a trespass," the words "prosecute for such a trespass" manifestly refer to civil suits, such as the one then before the court.

The government's contention on this branch of the case is fully met by the numerous Supreme Court decisions hereinbefore cited to the effect that, under the federal system, there can be no crimes except such as are created—that is expressly defined and penalized—by an act of Congress.

The demurrer to the indictment will be sustained.