## DASTERVIGNES et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 2, 1903.)

### No. 893.

1. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER—ACT AUTHORIZING REGULATIONS FOR FOREST RESERVATIONS.

The provision of the sundry civil appropriation act of June 4, 1897, relating to forest reservations (30 Stat. 35 [U. S. Comp. St. 1901, p. 1540]), which authorizes the Secretary of the Interior to "make such rules and regulations and establish such service as will insure the objects of such reservations, namely to regulate their occupancy and use and to preserve the forests thereon from destruction," and which itself prescribes the penalty for violation of such regulations, is not unconstitutional as delegating legislative power to an administrative officer, but is a valid delegation of power to make administrative regulations in relation to details necessary to carry out the purpose of the act.

2. FOREST RESERVATIONS—VALIDITY OF REGULATIONS—EXCLUSION OF SHEEP.

Rule 13, made and promulgated by the Secretary pursuant to such authority, which prohibits the pasturing of sheep and goats on public lands in the forest reservation, except in cases where permits for their limited grazing may be granted by the Land Department with the approval of the Secretary, is a proper and legitimate exercise of the authority conferred, which gives the Secretary the right to exclude from the reservations any class of live stock found to be destructive of the purpose for which they were created; and such rule cannot be said to create an unjust or illegal discrimination against the owners of the sheep, which constitute a class of live stock differing from any other in respect to pasturage, and which has uniformly been recognized as a proper subject for special legislation and regulation.

3. SAME—INJUNCTION AGAINST PASTURAGE OF SHEEP—GROUNDS.

A bill filed by the United States to enjoin the pasturage of sheep in a forest reservation, in violation of the regulations prescribed by the Secretary of the Interior, alleged that the sheep pastured within the reservation were committing great and irreparable injury to the public lands therein, and to the undergrowth, timber, and water supply. Affidavits filed in support of such allegations recited that the sheep of defendants

destroyed undergrowth, young and growing trees and seedlings, and ate and destroyed the roots of the vegetation and grasses, leaving the ground bare and subject to disastrous washings by the rains, to the irreparable injury of the reservation. *Held*, that such allegation and showing constituted a sufficient ground for the granting of a preliminary injunction.

4. EQUITY—SUFFICIENCY OF BILL—MULTIFARIOUSNESS.

A bill by the United States against a number of defendants, to enjoin them from pasturing sheep in a forest reservation, is not subject to the objection of misjoinder and multifariousness where it alleges that defendants are pasturing two bands of sheep in the reservation, and contains no averments which show or indicate any separate or distinct rights or different interests as between the several defendants.

Appeal from the Circuit Court of the United States for the Northern District of California.

For opinion below, see 118 Fed. 199.

Charles H. Fairall and H. R. McNoble, for appellants.

Marshall B. Woodworth, U. S. Atty. (P. C. Knox, U. S. Atty. Gen., of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This suit was brought to enjoin the plaintiffs in error, defendants in the court below, from herding and grazing sheep on the Stanislaus forest reservation, situate in the Northern District of California. The bill of complaint alleges, among other things, "that the President of the United States of America did, on the twenty-second day of February, 1897, and by virtue of the authority vested in him by section 24 of the act of March 3, 1891 (26 Stat. 1103 [U. S. Comp. St. 1901, p. 1537]), create and set apart from the public lands and domain of the United States, certain public lands within the state of California," known as the "Stanislaus Forest Reservation"; that under and by virtue of an act of Congress approved June 4, 1897, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1898, and for other purposes," (30 Stat. 35 [U. S. Comp. St. 1901, p. 1540]), the Secretary of the Interior was vested with authority to make such rules and regulations, and establish such service, as would insure the objects for which forest reservations were created under section 24 of the act of March 3, 1891; that the Secretary of the Interior did, under and by virtue of the authority vested in him under the act of Congress of June 4, 1897, make, prescribe, and promulgate on December 23, 1901, rule 13, which declared that "the pasturing of sheep and goats on the public lands in the forest reservation is prohibited," provided that in certain named states and localities, where the continuous moisture and abundant rainfalls make rapid renewal of herbage and undergrowth possible—

"The Commissioner of the General Land Office may, with the approval of the Secretary of the Interior, allow the limited grazing of sheep within the reserves or parts of reserves * * * and also provided, that when it shall appear that the limited pasturage of sheep and goats in a reserve, or part of a reserve, in any state or territory will not work an injury to the reserve, that the protection and improvement of the forests for the purpose of insuring a permanent supply of timber and the condition favorable to a continuous

water flow, and the water supply of the people will not be adversely affected by the presence of sheep and goats within the reserve, the Commissioner of the General Land Office may, with the approval of the Secretary of the Interior, also allow the limited grazing of sheep and goats within such reserve. Permission to graze sheep and goats within the reserves will be refused in all cases where such grazing is detrimental to the reserves or to the interests dependent thereon. * * * The pasturing of livestock, other than sheep and goats, will not be prohibited in the forest reserves so long as it appears that injury is not being done the forest growth and water supply, and the rights of others are not thereby jeopardized. Owners of all livestock will be required to make application to the Commissioner of the General Land Office for permits to graze their animals within the reserve. Permits will only be granted on the express condition and agreement on the part of the applicants that they will agree to fully comply with all and singular the requirements of any law of Congress now or hereafter enacted relating to the grazing of livestock in forest reserves, and with all and singular the requirements of any rules and regulations now or hereafter adopted in pursuance of any such law of Congress."

The bill further alleges that the defendants, in July, 1902, did conduct and drive upon the Stanislaus reservation "two bands of sheep, numbering two thousand sheep or thereabouts in each band, for the purpose and with the object of grazing, pasturing, and feeding said sheep upon the grass, herbage, and undergrowth, growing and being" upon the Stanislaus forest reservation, in violation of the thirteenth paragraph of the rules and regulations of December 23, 1901. That said sheep have been and remained upon said reservation continuously up to the present time, and now are, and still remain, upon the said reservation, grazing, pasturing, and feeding upon the grass, herbage, and undergrowth growing upon said reservation, in violation of paragraph 13 of the rules and regulations above referred to; that said defendants have not, nor has either of them, obtained for himself or any one else a permit from the Commissioner of the General Land Office, approved by the Secretary of the Interior, allowing or permitting the grazing and pasturing of said sheep upon said reservation; that said sheep are "committing great and irreparable injury to the said public lands of the Stanislaus forest reservation, and to the grasses, herbage, and undergrowth growing and being upon the public lands of said Stanislaus forest reservation, and to the timber and water flow and water supply in and upon the public lands of said Stanislaus forest reservation, by grazing and pasturing upon the same, and upon the grass, herbage, and undergrowth growing and being upon the public lands of said Stanislaus forest reservation, and by drinking from the water flow and the water supply in said Stanislaus forest reservation, and by the tramping, traveling, and driving of said sheep onto and upon the public lands of said Stanislaus forest reservation." And, in support of the equitable relief asked for, the bill contains the further averment that, unless said defendants are restrained and enjoined from further allowing their sheep to graze upon said reservation, "great and irreparable injury will ensue to the public lands of said Stanislaus forest reservation." Affidavits were filed in support of the averments in said bill as to the injury resulting to the lands of said reservation.

Upon the filing of the bill, the court made an order requiring defendants to appear and show cause, if any they could, why they should not be enjoined from the commission of the acts complained of, and

in the meantime issued a restraining order enjoining them from the commission of such acts. The defendants appeared and moved to dissolve the restraining order, on the ground that it was issued without right, and that the bill is without equity. At the same time the defendants interposed a demurrer to the bill, on the ground that it does not state facts sufficient to constitute a cause of action, or entitle the complainant to any relief, and upon the further ground that there is a misjoinder of parties defendant, in this: that there is no joint act, or joint threatened act, of the parties mentioned in the bill. Upon the hearing of the motion, supplementary affidavits were filed by both parties, one of which—the affidavit of Newhall in support of the bill—was more specific, with reference to the ground that the acts committed constitute irreparable injury, than was alleged in the bill, in this: that the sheep "not only eat and destroy the vegetation, grasses, undergrowth, young and growing trees and seedlings, upon said lands, but that they devour and eat up and destroy the roots of said vegetation, grasses, undergrowth, young and growing trees and seedlings, to the permanent and irreparable injury of said Stanislaus forest reserve; * * * that the devouring and destruction of the vegetation, grasses, undergrowth, young and growing trees and seedlings, in the manner hereinbefore specified, leaves the earth bare and liable to disastrous washings out by the rains, leaving no soil or earth, but bare rock, which renders the growth of vegetation, grasses, undergrowth, young and growing trees and seedlings, extremely difficult, and in many cases impossible, all to the irreparable damage and injury of said Stanislaus forest reserve, and the purposes for which said forest reserve were created."

The court, upon the hearing, overruled the demurrer, and granted an order for an injunction pendente lite. This appeal is from the order granting the injunction.

The contention of counsel for appellants is (1) that the rules hereinbefore referred to "discriminate against the owners of sheep"; (2) that the appellants "had an implied license to pasture [their sheep] upon the public domain"; (3) that the act of Congress approved June 4, 1897, is an "unauthorized delegation of legislative authority to an administrative officer"; (4) that "no irreparable injury is shown"; and (5) that "there is a misjoinder of defendants." And upon these several points they cite many authorities.

It must be admitted that the legislative authority of the United States is vested in Congress, and that Congress has no authority to delegate legislative power to the Secretary of the Interior, or to any administrative officer the authority to make laws; and if the act of Congress approved June 4, 1897 (30 Stat. 35 [U. S. Comp. St. 1901, p. 1540]), is legally susceptible of the construction contended for by appellants, it would clearly be unconstitutional. By that act the Secretary of the Interior was authorized to "make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." Does this language delegate any power to the Secretary of the Interior to make a law, or does it simply confer upon the Secretary an authority to adopt such

122 F.—3

·rules and regulations as to him may seem fit and proper in order to secure the objects for which the reservation was created; such acts to be exercised under and in pursuance of the law enacted by Congress? Let us see. Congress cannot delegate its power to make a law; but it can make a law to delegate a power to an administrative officer to determine a fact or condition of affairs in regard to which the law makes its own action depend.

In Railroad Co. v. Commissioners of Clinton County, 1 Ohio St. 77, 88, the correct rule upon this subject, and the distinction existing between these two lines of cases, is clearly and correctly stated. The court said:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

In Port Royal M. Co. v. Hagood (S. C.) 9 S. E. 686, 3 L. R. A. 841, 844, the Legislature, having the power to grant or refuse a license to mine phosphate rock in navigable streams, delegated this power to the Board of Agriculture, and declared that "it shall be within the power and authority of the said board to grant or refuse the said license, as the said board may, in its discretion, deem best for the interests of the state." 18 St. at Large, S. C. p. 779. In the course of the opinion, the court said:

"It is undoubtedly true that legislative power cannot be delegated, but it is not always easy to say what is and what is not legislative power, in the sense of the principle. The Legislature is only in session for a short period of each year, and during the recess cannot attend to what might be called the 'business affairs' of the state. From the necessity of the case, as well as the character of the business itself, that must be performed by agents appointed for that purpose. * * * The numerous authorities cited in the argument show conclusively that, while it is necessary that the law itself should be full and complete as· it comes from the proper lawmaking body, it may be, indeed, must be, left to agents, in one form or another, to perform acts of executive administration, which are in no sense legislative."

Rule 13 promulgated by the Secretary of the Interior is in accord with the provisions of the act of Congress, and, in our opinion, was a valid and legitimate exercise of the authority delegated to him to make such rules and regulations as would insure the objects of such reservations. The Secretary, by adopting this rule, acted simply as the arm that carries out the legislative will. He did not invade any of the functions of Congress. He did not make any law, but he exercised the authority given to him, and made rules to preserve the forests on the reservations from destruction. Such rules, within constitutional limits, have the force and effect of law, and it is the duty of courts to protect and enforce them in order to uphold the law as enacted by Congress. As was said by the court in Locke's Appeal, 72 Pa. 491, 499, 13 Am. Rep. 716:

"To deny this would be to stop the wheels of government. There are many things, upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

The national courts have universally upheld and sustained such rules and regulations made by its administrative officers, under the authority given by an act of Congress, whenever made necessary to carry out and enforce the provisions of the law. "It is a general principle of law, in the construction of all powers of this sort, that, where the end is required, the appropriate means are given." United States v. Bailey, 9 Pet. 238, 255, 9 L. Ed. 113. There are many acts of Congress which are regulated by direct legislation, wherein general provisions are made concerning the subject-matter thereof, and in such acts, wherever it becomes necessary so to do, authority may be conferred and power given to an administrative officer, who is required by the law to act under its general provisions, to prescribe the details which must be pursued in the execution thereof, for, as was said by Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1, 43, 6 L. Ed. 253, "Congress may certainly delegate to others powers which the Legislature may rightfully exercise itself."

The views upon this subject, which we have briefly expressed, are sustained by numerous authorities: Field v. Clark, 143 U. S. 649, 693, 12 Sup. Ct. 495, 36 L. Ed. 294; Caha v. United States, 152 U. S. 212, 222, 14 Sup. Ct. 513, 38 L. Ed. 415; Bushnell v. Leland, 164 U. S. 684, 685, 17 Sup. Ct. 209, 41 L. Ed. 598, and authorities there cited; Railway Co. v. Ohio, 165 U. S. 365, 17 Sup. Ct. 357, 41 L. Ed. 747; United States v. Ormsbee (D. C.) 74 Fed. 207, 209; United States v. City of Moline (D. C.) 82 Fed. 592, 598; Grady v. United States, 39 C. C. A. 42, 98 Fed. 239; Chatfield v. City of New Haven (C. C.) 110 Fed. 788, 792.

The rules and regulations prescribed by the Secretary of the Interior do not unjustly or illegally discriminate against the owners of sheep. They do not draw an arbitrary distinction between sheep and cattle or other live stock. They do not create any improper classification, or create any special privileges in violation of the provisions of the constitution. They simply carry out the object and purpose of the law in regard to the forest reservations. Sheep, as a species of live stock, are separable from other domestic animals, and are so treated in the laws of the several states. A law which requires a license to herd and pasture sheep is not unconstitutional, and does not constitute an improper classification. Ex parte Mirande, 73 Cal. 365, 14 Pac. 888; Flanigan v. The County of Sierra, 122 Fed. 24, and authorities there cited.

The Secretary of the Interior having, under the law, power to regulate the occupancy and use, "and to preserve the forests thereon from destruction," has the right to prescribe such rules as will prevent the entering upon such reservations any class of live stock which is found to be destructive of the objects of the reservation. Such rules and regulations do not come within the ban of class legislation prohibited by the Constitution. The rules and regulations operate alike on all persons and property similarly situated, and do not deny to any one the equal protection of the law. There is no prohibition against legislation of this general character. "The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application. * * * Such legislation does not in-

fringe upon the clause of the fourteenth amendment requiring equal protection of the laws, because it is special in its character." Railway Co. v. Mackey, 127 U. S. 205, 209, 8 Sup. Ct. 1161, 32 L. Ed. 107; Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923, Duncan v. Missouri, 127 U. S. 382, 14 Sup. Ct. 570, 38 L. Ed. 485; Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256.

We are of opinion that the showing made on the hearing for the issuance of an injunction pendente lite was sufficient. If the allegations in the complaint were weak in this regard, as intimated by the circuit judge, the defect in this particular was, for the purpose of the hearing, supplied by the supplemental affidavit of Newhall.

Upon the point that there is a misjoinder of defendants, and that the complaint is multifarious, appellants cite several authorities, which are not, in our opinion, applicable to the facts of this case. They relate more particularly to cases where persons are engaged in distinct and separate wrongs "in no wise connected by the ligament of a common purpose." 15 Ency. Pl. & Pr. 562, and authorities there cited. In the present case it is clearly shown, by the averments in the bill, that the principles of law, the facts pleaded, and the trespass committed, are all identically the same against each and every of the defendants. The remedy sought and the relief asked for by the complainant is also the same against each and all of the defendants. There are no averments in the bill which indicate any separate or distinct rights, or different interests, between any of the defendants. The acts alleged against the defendants are of the same character, and, so far as appears from the bill, the defendants are acting in common under the same claim of right, and have a common interest touching the matters alleged in the bill, and in such case they may be joined as defendants, and their joinder might also be sustained for the purpose of avoiding a needless multiplicity of suits. 1 Story, Eq. Jur. §§ 284, 285; 1 Pomeroy, Eq. §§ 256, 274; 15 Ency. Pl. & Pr. 678, 679, and authorities there cited; Gaines v. Cronan, 1 Woods, 118, Fed. Cas. No. 5,176; Railroad Co. v. Walker (C. C.) 47 Fed. 681, 682; Bailey v. Tillinghast, 40 C. C. A. 93, 99 Fed. 801, 807, and authorities there cited.

The order of the Circuit Court is affirmed.