UNITED STATES v. MATTHEWS.

(District Court, E. D. Washington, S. D. May 7, 1906.)

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER—CREATION OF CRIMES.

The provision of the sundry civil appropriation act of June 4, 1897, c. 2, 30 Stat. 34 [U. S. Comp. St. 1901, p. 1540], making it a criminal offense to violate any rule or regulation which should thereafter be made by the Secretary of the Interior, under the power therein conferred (since transferred to the Secretary of Agriculture), for the protection of forest reservations, is void as an attempted delegation of legislative power to an administrative officer, and an indictment will not lie for the pasturing of sheep on a forest reservation without a permit, in violation of a regulation made by the secretary, but which is not prohibited by any statute of the United States.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, §§ 96-99.]

On Demurrer to Indictment.

A. G. Avery, U. S. Atty.

H. J. Snively, for defendant.

WHITSON, District Judge. The defendant was indicted for having on the 11th day of September, 1905, "wrongfully, unlawfully, and without the permit required by law and the regulations made by the Secretary of Agriculture," grazed sheep on the Mount Rainier Forest Reserve. The indictment was framed under the act approved June 4, 1897, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1898, and for other purposes" (chapter 2, 30 Stat. 11 [U. S. Comp. St. 1901, p. 3768]), and the act approved February 1, 1905, entitled "An act providing for the transfer of forest reserves from the Department of the Interior to the Department of Agriculture" (chapter 288, 33 Stat. pt. 1, p. 628. [U. S. Comp. St. Supp. 1905, p. 343]). The latter act simply transfers from the Secretary of the Interior to the Secretary of Agriculture the authority to execute or cause to be executed all laws affecting public lands theretofore or thereafter reserved under the provisions of section 24 of the act approved March 3, 1891 (chapter 561, 26 Stat. 1103 [U. S. Comp. St. 1901, p. 1537]), entitled "An act to repeal the timber culture laws and for other purposes," while we must look to the former for a definition of the crime. That part of the act under which it is sought to sustain the indictment reads:

"The Secretary of the Interior shall make provisions for the protection against destruction by fire and depredations upon the public forests and forest reservations which may have been set aside or which may be hereafter set aside under the said act of March third, eighteen hundred and ninety-one, and which may be continued; and he may make such rules and regulations, and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this act or such rules and regulations shall be punished as is provided for in the act of June fourth, eighteen hundred and eighty-eight, amending section fifty-three hundred and eighty-eight of the Revised Statutes of the United States." Act June 4, 1897, c. 2, 30 Stat. 34 [U. S. Comp. St. 1901, p. 1540].

The Secretary of Agriculture has made rules and regulations which apply to the "occupancy and use" of the Mount Rainier Forest Reserve, and those alleged to have been violated are set out in full in the indictment, as follows:

"Reg. 9. All persons must secure permits before grazing any stock in a forest reserve, except the few head in actual use by prospectors, campers, and travelers, and milch cows and work animals not exceeding a total of six head owned by bona fide settlers, which are excepted and require no permit. Any person responsible for grazing stock without a permit is liable to punishment for violation of the law."

"Reg. 11. The Secretary of Agriculture will determine the number of stock to be allowed in a reserve for any year. The period during which grazing will be allowed is determined by the forester. The supervisor is authorized to issue grazing permits in accordance with the instruction of the forester."

"Reg. 14. Permits will be granted only to the actual owners of stock and for their exclusive use and benefit, and will be forfeited if sold or transferred in any manner or for any consideration without the written consent of the forester."

The sufficiency of the indictment has been challenged by demurrer, upon the ground that the provision above quoted, making it an offense to violate rules and regulations made by the Secretary of Agriculture, is an attempt by Congress to delegate its legislative power. The United States Attorney relies upon the case of Dastervignes v. United States (Ninth Circuit) 122 Fed. 30, 58 C. C. A. 346, to sustain the indictment, and he has called attention to Dent v. United States (decided by the Supreme Court of Arizona) 76 Pac. 455, as fortifying his position that the Circuit Court of Appeals had in view criminal offenses as well as civil actions when the decision was made. That case will therefore be first examined to ascertain whether the rule has been so declared in this circuit. To avoid confusion it is necessary to bear in mind the subject-matter of the suit. It arose out of a controversy between the government and certain persons who were herding and grazing sheep on the Stanislaus forest reservation in the Northern district of California, the complainant praying for an injunction. The holding was that the right to make rules, expressly granted by Congress, to regulate the occupancy and use of forest reservations, "and to preserve the forests thereon from destruction," did not involve the delegation of legislative power as applied to the property of the government, but, on the contrary, that the making of such rules was a proper exercise of administrative authority delegated for the control of that portion of the public domain embraced within the provisions of the act. Undoubtedly it was in that sense, and with that thought in view, that the language of Chief Justice Marshall, in Wayman v. Southard, 10 Wheat. 1–43, 6 L. Ed. 253, was quoted, namely: "Congress may certainly delegate to others powers which the Legislature might rightfully exercise itself"—for those words are immediately preceded by the following: "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative."

The recent decision of the same court in Stratton v. Oceanic Steamship Company (C. C. A.) 140 Fed. 829, makes the matter, if possible, all the more apparent. In addition to the cases already noted

the following have been cited as upholding the indictment: Van Lear v. Eisele (C. C.) 126 Fed. 823; United States v. Slater (D. C.) 123 Fed. 115; E. A. Chatfield Company et al. v. City of New Haven et al. (C. C.) 110 Fed. 788; United States v. Breen (C. C.) 40 Fed. 402; United States v. Ormsbee (D. C.) 74 Fed. 207; United States v. Williams (Mont.) 12 Pac. 851; In re Huttman (D. C.) 70 Fed. 699; United States v. City of Moline (D. C.) 82 Fed. 592; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Butte City Water Co. v. Baker (Mont.) 72 Pac. 617; Id., 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; United States v. Reder (D. C.) 69 Fed. 965; United States v. Price Trading Co., 109 Fed. 239, 48 C. C. A. 331. It is claimed that these cases, either directly or by analogy of reasoning, sustain the contention of the government. Without undertaking to review them at length, or to discuss the applicability of each particular case, it may be remarked with assurance that they do not do so.

It is fundamental that the citizen has the right to rely upon the statutes of the United States for the ascertainment of the acts which constitute an infraction of its laws. This principle was expressed by the Supreme Court in Re Kollock, 165 U. S. 533, 17 Sup. Ct. 444, 41 L. Ed. 813, as follows:

"We agree that the courts of the United States, in determining what constitutes an offense against the United States, must resort to the statutes of the United States, enacted in pursuance of the Constitution."

A citizen desiring to obey the laws would search the acts of Congress in vain to find that grazing sheep upon a forest reserve without the permit of the Secretary of Agriculture is a criminal offense. It has been suggested that the acts under which the indictment is drawn give notice that the Secretary may make rules and regulations, and that the search would not be complete and the inquiry concluded until it be ascertained whether he has made such rules and regulations, the violation of which it is expressly declared shall be a criminal offense. But here we are led back to the delegation of legislative power. The rules prescribed by the heads of the departments are not necessarily promulgated. While they may be procured, they are not as easily available as are the statutes of the United States; nor does our system contemplate an examination of those rules for the ascertainment of that which may or may not be a crime, for the right to prohibit a given thing under penalty belongs to Congress alone.

In Re Kollock, supra, regulations made by the Secretary of the Treasury relating to packages of oleomargarine to be marked and branded were sustained, because the law in terms prohibited the sale of packages not so marked and branded. An excerpt from that case reads:

"The regulation was in execution of, or supplemental to, but not in conflict with, the law itself, and was specially authorized thereby in effectuation of the legislation which created the offense."

In Morrill v. Jones, 106 U. S. 467, 1 Sup. Ct. 423, 27 L. Ed. 267, it was said:

"The Secretary of the Treasury cannot by his regulations alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted."

In United States v. Eaton, 144 U. S. 677–687, 12 Sup. Ct. 764, 36 L. Ed. 591, a regulation made by the Commissioner of Internal Revenue, and approved by the Secretary of the Treasury, was under discussion. That regulation was, under the act of August 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2228], in relation to the sale of oleomargarine, which required wholesale dealers therein to keep a book and make monthly return showing certain prescribed matters. A wholesale dealer in oleomargarine failed to comply with the regulation made by the secretary, and it was decided that he was not held to the penalty imposed by section 18 of the act (24 Stat. 212 [U. S. Comp. St. 1901, p. 2234]), because he did not fail to do a thing required by law in carrying on or conducting his business; that a sufficient statutory authority should exist for declaring any act or omission a criminal offense. The act referred to was not so broad in its terms as the one under consideration. The section considered by the court which prescribed the penalty follows:

"That if any manufacturer of oleomargarine, any dealer therein or any importer or exporter thereof shall knowingly or willfully omit, neglect or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything by this act prohibited, if there be no specific penalty or punishment imposed by any other section of this act for the neglecting, omitting or refusing to do, or for doing or causing to be done the thing required or prohibited, he shall pay a penalty," etc.

In discussing the statute the Supreme Court laid down this wholesome doctrine:

"Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. It is a principle of criminal law that an offense which may be the subject of criminal procedure is an act committed or omitted 'in violation of a public law, either forbidding or commanding it. 4 American & English Encyclopedia of Law, 642; 4 Bl. Com. 5. It would be a very dangerous principle to hold that a thing prescribed by the Commissioner of Internal Revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing 'required by law' in the carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offense punishable under section 18 of the act. * * * It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offense, and we do not think that the statutory authority in the present case is sufficient."

To like effect are United States v. Maid (D. C.) 116 Fed. 650, and United States v. Blasingame (D. C.) 116 Fed. 654.

Have we here a case involving the delegation of legislative power? That Congress intended to punish by penalty made certain the violation of regulations made by the Secretary of Agriculture, and to declare the same a criminal offense, is beyond controversy. But the grazing of stock upon the forest reserves has not been prohibited by any congressional act. The prohibition rests entirely upon regulations made by the secretary. Regulation No. 9 prescribes, as we

have seen, that all persons before grazing sheep in a forest reserve must secure a permit, and any person responsible for grazing the same without a permit becomes a violator of the law; that is, whoever violates a rule promulgated by the secretary violates a law passed by Congress. The evident embarrassment attending the making of regulation 9, in an attempt to bring it within the act of Congress, is apparent by the language used. Clearly there was a keen appreciation of the necessity of supplying that which Congress had failed to enact, and this was attempted by the use of the words, "is liable to punishment for violation of the law." At times the line is somewhat indistinct between that which constitutes the delegation of legislative power and the delegation of administrative authority.

This case does not fall within the rule so well explained and amplified by the authorities that the executive branch of the government may make proper rules and regulations for carrying into effect the legislative will of Congress. The president may be authorized to declare by proclamation that a law shall go into effect upon the happening of a certain contingency. The Secretary of the Treasury may make rules and regulations for the enforcement of the revenue statutes and the like. So may the heads of all the departments make like regulations, but the authority to do so must be expressly delegated, and the law must be complete in itself. The rules and regulations may only be prescribed for carrying out what Congress has expressly declared to be the law. Such powers do not pertain to the legislative functions, but are referable to administrative duties. Congress cannot leave a statute to be enlarged upon either by the courts or the executive department. It cannot authorize any other branch of the government to define that which is purely legislative, and that is purely legislative which defines rights, permits things to be done, or prohibits the doing thereof. Certainly here, it is the Secretary of Agriculture who has undertaken to enact this law. He it is who has designated that which constitutes the crime. The thing prohibited, the thing for which the party is to be punished, the act which is the offense, is prescribed by the secretary, and not enacted by Congress. As we have seen, this cannot be done.

The objection to the indictment is the absence of a law defining the act therein charged as a criminal offense. Upon that ground the demurrer must be sustained, and the defendant discharged.