UNITED STATES v. HAAS et al.

(Circuit Court, S. D. New York. August 28, 1908.)

Nos. 307–310.

1. CONSPIRACY—"CONSPIRACY TO DEFRAUD UNITED STATES"—ELEMENTS OF OFFENSE.

An indictment which charges a confederated effort to deprive the national government of the right and privilege of proper service in the Department of Agriculture by corrupting an employé of such department, and inducing him to secretly furnish advance information of crop conditions, contrary to the rules of the department, and to issue false reports to the public as to such conditions, charges a conspiracy to defraud the United States under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676).

2. BRIBERY — OFFENSES AGAINST UNITED STATES—PERSON ACTING IN OFFICIAL FUNCTION—"ACTS FOR UNITED STATES IN AN OFFICIAL FUNCTION."

A person employed by the United States as an assistant statistician in the Department of Agriculture, in the performance of the duties with which he is charged by the rules of the department, acts for the United States in an official function, within the meaning of Rev. St. § 5451 (U. S. Comp. St. 1901, p. 3680), making it a criminal offense to bribe any such person to induce him to do or to omit to do any act in violation of his lawful duty.

3. CONSPIRACY—"CONSPIRACY TO COMMIT OFFENSE AGAINST UNITED STATES"—BRIBERY OF OFFICER—"LAWFUL DUTY."

In Rev. St. § 5451 (U. S. Comp. St. 1901, p. 3680), which makes it a criminal offense to give or offer bribes, etc., to induce any officer of, or person acting for or on behalf of, the United States in any official function to do or omit to do any act in violation of his lawful duty, the phrase "lawful duty" is not restricted to a duty imposed by statute, but is broad enough to cover a duty imposed by a lawful superior; and an indictment charging a conspiracy to induce an assistant statistician in the Department of Agriculture to furnish to the accused advance news of crop conditions, and to cause to be published false reports as to such conditions in violation of the rules of the department, to aid defendants in market speculations, by promising such employé a percentage of the profits of such speculations, charges a conspiracy to commit an offense against the United States under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676).

On Demurrer. On demurrer by Haas to four indictments found against him jointly with others not joining in the demurrers.

H. L. Stimson, U. S. Atty., J. C. Adkins, G. H. Dorr, and C. A. Roberts, for the United States.

Nash Rockwood, for defendant Haas.

HOUGH, District Judge. At the times in the indictments mentioned one Holmes was an employé of the United States, acting as assistant statistician in the Department of Agriculture. His duties were to consider and tabulate (or assist in so doing) the reports on cotton planting and cotton crop conditions furnished to the department by its local experts, and thus prepare (or assist in preparing) the reports on cotton furnished to the public under governmental authority. Such or similar reports on agricultural conditions have been furnished by the proper department ever since the organization of the Department of the Interior. They were in general terms authorized by the statute (May 15, 1862) establishing that department. This function of the

Interior Department passed to the then created Department of Agriculture in 1892, and both before and since that date Congress has specifically appropriated money for the collection and publication of crop reports. By Act July 5, 1892, c. 147, 27 Stat. 76 (U. S. Comp. St. 1901, p. 294), it is declared that monthly crop reports must be submitted to the Secretary of Agriculture, "who shall officially approve the report before it is issued or published." During all the time referred to in the indictments, it was the written and published rule or regulation of the Agricultural Department (of which judicial notice is taken) that no crop information should be published or divulged by any subordinate without the written approval of a bureau chief, which Holmes was not.

For the purposes of these demurrers, the substance of the indictments may be thus stated: It is alleged that Haas et al. agreed with each other and with Holmes that the latter should—and he did— (1) give Haas et al. advance information concerning cotton, contrary to the rules and regulations aforesaid; (2) cause to be published—and he did publish—with official approval fraudulently obtained, a false crop report; and (3) that for these services Holmes should receive a percentage of the gains of Haas et al., to be made in cotton speculation based upon their private information, or the public's misinformation, so as aforesaid obtained or brought about. The indictments present this agreement between Haas, Holmes et al. as a conspiracy under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676) and such conspiracy is charged as being both to defraud the United States and to commit an offense against the United States. They also present the corruption of Holmes, not only as one of the objects of the conspiracy, but as a substantive offense; i. e., violation of Rev. St. § 5451.

Defendants' first proposition is that, inasmuch as it is not shown that the United States was deprived of anything of value by the transactions recounted above, no indictment for conspiracy to defraud under section 5440 will lie. This subject I have recently examined in United States v. Morse (C. C.) 161 Fed. 429, and need only repeat my conviction that the subject is not open to further discussion in courts of first instance. The indictment charges a confederated effort to deprive the national government of the right and privilege of proper service in the Department of Agriculture, and that is enough, according to cases too numerous to permit dissent by a trial court.

It is next urged that in issuing crop reports, including cotton statements, the United States was not exercising governmental functions. This contention is overruled on the statement of facts above compiled from the indictments and public statutes.

Premising that a conspiracy under section 5440 to commit an offense against the United States presupposes that a statutory crime was intended by the conspirators, Haas finally argues that section 5451 could not have been violated either in intention or fact, because: (1) Holmes was not an "officer of the United States." (2) Holmes was not "a person acting for or on behalf of the United States in any official function," inasmuch as collecting and disseminating information about cotton was not an official (i. e., governmental) function of the United States, and, if the national government could not exercise

that function, a fortiori, the same could not be delegated to Holmes. (3) Holmes was not prohibited from doing what he did by any statute, consequently he did not commit any "offense against the United States," and it follows that it was not such offense to procure him to commit noncriminal acts. (4) The promise of contingent gain made to Holmes was not "money or other thing of value," nor a "contract, undertaking, obligation, gratuity, or security, for the payment of money or for the delivery or conveyance of anything of value," wherefore, though Holmes may have done wrong and Haas counseled or procured him to do so, the procurement was not in the way proscribed by section 5451, wherefore no one so acting can be reached either directly under section 5451 or indirectly under section 5440.

The premise of these contentions is admitted. Since there are no common-law offenses against the United States, the offense mentioned in section 5440 must be statutory.

(1) Whether Holmes was an "officer" need not be decided.

(2) It is held that Holmes was a person acting for the United States in an official function for reasons plainly inferable from the facts stated above.

(3) Let it be assumed for the sake of argument that Holmes committed no crime (i. e., violated no statute) when he perpetrated any or all of the moral wrongs set forth in the indictments.

But violating "lawful duty" and breaking statutes are not synonymous expressions, and defendants' argument passes too lightly over the language of section 5451, which does make it a crime to induce one acting for the United States to do any act in violation of his lawful duty. It follows that Haas' contention can only be supported by holding that "lawful duty" means duty imposed by statute, and nothing else. This is repugnant to common (and correct) usage. The phrase "lawful duty" is amply wide to cover duty imposed and regulated by a lawful superior. In this sense it was Holmes' lawful duty to obey the rules and regulations of his department duly promulgated and known to him; nor is it material that such regulations should be in writing.

Citations of cases like United States v. Keitel (D. C.) 157 Fed. 396, to show that violating a departmental rule is not a crime, do not advance the argument at all. Let it be admitted that such is the law, but that does not show or tend to show that Congress cannot make it a crime to incite or cause another to violate such rule. This question, however, is not fairly presented in this case, and need not be pursued further than to note a query as to the correctness of the ruling in United States v. Matthews (D. C.) 146 Fed. 306.

The question really is: What does "lawful duty" mean, and was it Holmes' "lawful duty" to refrain from doing what the indictments assert he did? It would be a strange government wherein the conduct of officials of every grade was regulated in minute detail by statute. "Of necessity usages have been established in every department of the government which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits." United States v. MacDaniel, 7 Pet. 1, 8 L. Ed. 587; Benson v. Henkel, 198 U. S. 1, 25 Sup. Ct. 569, 49 L. Ed. 919. The indict-

ment avers that Holmes knew the rule of secrecy, and Haas knew it, and with that knowledge induced its violation. That Holmes violated his lawful duty in yielding to temptation seems to me especially clear.

(4) The promise to give or pay Holmes a share of profits if there were any is clearly within the prohibition of section 5451. Of course, the promise was unenforceable, because the consideration was grossly immoral, but the same objection would apply to a formal contract for the payment of a definite sum of money. It may be noted that this statement of the agreement with Holmes is found only in the "overt acts" appended to the indictment proper. It is not necessary to set forth overt acts in an indictment for conspiracy, and, if set forth, they cannot be resorted to in aid of the averments of the charging portion of the pleading, nor can they on demurrer be considered, because they are not strictly part of the indictment. They may on motion to quash afford ground for setting aside the pleading; but that point is not raised here.

No other matter suggested in argument seems to me to need comment.

The demurrers are overruled.