UNITED STATES v. LOUISVILLE & N. R. CO.

(District Court, N. D. Alabama, N. D. March 15, 1910.)

1. CONSTITUTIONAL LAW (§ 62*)—DISTRIBUTION OF POWERS—LEGISLATIVE POWER—DELEGATION TO EXECUTIVE OF POWER TO DESIGNATE CRIMES.

A crime may only be created by a public act, the language of which is sufficient in itself to completely declare and define the crime and fix its punishment, Congress having no power to delegate to the President or to the head of any executive department authority to declare what facts shall constitute an offense, though it is competent for Congress to commit to the executive the power to determine when the occasion provided by the law itself for its going into effect has occurred, and whether the facts which the law makes conditions to its operation or to a partial or temporary suspension of its operation exist, and also to provide the details of the law's administration.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

2. CONSTITUTIONAL LAW (§ 62*)—DISTRIBUTION OF POWERS—DELEGATION TO EXECUTIVE OF POWER TO DESIGNATE CRIMES—QUARANTINE REGULATIONS.

Act Cong. March 3, 1905, c. 1496, § 4, 33 Stat. 1264 (U. S. Comp. St. Supp. 1909, p. 1186), provides that cattle and other live stock may be moved from quarantined territory of one state to another state in compliance with the rules and regulations established by the Secretary of Agriculture, and that it shall be unlawful to move them otherwise; and section 6 declares that any one violating section 4 shall be guilty of a misdemeanor, and fixes the punishment therefor. *Held*, that the offense denounced by section 4 is defined merely by rules and regulations thereafter to be established by the Department of Agriculture, and hence no offense was created by such section under the rule that Congress has no power to intrust to the executive power to declare by a departmental rule or regulation that to be unlawful and to constitute a crime which would otherwise not be so, nor itself to declare a violation of rules or regulations, thereafter to be promulgated by the executive, a criminal offense.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CONSTITUTIONAL LAW (§ 62*)—DISTRIBUTION OF POWERS—DELEGATION TO EXECUTIVE OF POWER TO DESIGNATE CRIMES—QUARANTINE REGULATIONS.
Act Cong. March 3, 1905, c. 1496, § 1, 33 Stat. 1264 (U. S. Comp. St. Supp. 1909, p. 1185), authorizes the Secretary of Agriculture to establish quarantine limits for the transportation of live stock, and section 2 prohibits transportation companies from receiving for transportation, or transporting from any quarantined territory in one state to another state, "any cattle or live stock except as hereinafter provided," and section 6 makes a violation of section 2 a misdemeanor. The exception referred to in section 2 is that, in the event the Secretary shall deem that public safety permits, he shall establish rules and regulations under which live stock may be lawfully moved from quarantined territory in one state to another state. Held, that the exception was not to be construed as broad as the prohibition, and equivalent to a general prohibition against all shipments accompanied by a general permission of all shipments on compliance with departmental rules, but rather as containing a general prohibition, together with a limited and conditional exception, applicable only to such epidemics determined by the secretary to be of such a character as to justify shipments under particular safeguards; and hence section 2 was not invalid as attempting to create an offense for violation of the departmental rule.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

4. ANIMALS (§ 31*)—TRANSPORTATION—QUARANTINE REGULATIONS.
Amendment No. 2 of order No. 143 of the regulations of the Agricultural Department, covering shipments of cattle from quarantined territory, only modified, and did not revoke, order No. 143, by revoking regulations 13 and 14 and substituting two new regulations therefor.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 81; Dec. Dig. § 31.*]

The Louisville & Nashville Railroad Company was indicted for violating the live stock quarantine act, and demurred to the indictment. Demurrer overruled.

O. D. Street, U. S. Atty.
John C. Eyster, for defendant.

GRUBB, District Judge. The indictment charges the defendant with a violation of Act March 3, 1905, c. 1496, 33 Stat. 1264 (U. S. Comp. St. Supp. 1909, p. 1185), providing for the establishment of live stock quarantines by the Secretary of Agriculture, and the prohibition of live stock shipments from quarantined territory in one state into another state, except when rules and regulations permitting such shipments have been established by the secretary, and then except in accordance with such rules and regulations. The demurrer to the indictment attacks the constitutionality of the law under which it is framed, upon the ground that its effect is to delegate legislative authority to the executive, and because no complete offense is defined by the terms of the statute.

The act contains six sections. The first authorizes the secretary to quarantine any state or territory, or any portion thereof, when he has determined that live stock within it are infected with any contagious diseases, and to give notice thereof to transportation companies. The second prohibits, among other things, transportation companies from receiving for transportation or transporting from any quarantined

territory in one state to another state "any cattle or live stock, except as hereinafter provided." The third section makes it the duty of the secretary, when the public safety will permit, to make and promulgate rules and regulations governing the shipment of cattle and other live stock from quarantined territory in one state to another state, and to give notice of such rules and regulations in the same way as notice of the establishment of the quarantine is required to be given. The fourth section provides that cattle and other live stock may be moved from the quarantined territory of one state to another state in compliance with the rules and regulations so established, and that it shall be unlawful to move them otherwise. The fifth section provides penalties for assaults upon officers of the quarantine service. The sixth and last section declares any one violating section 2 or 4 of the act guilty of a misdemeanor and fixes the punishment therefor.

The indictment alleges the establishment of the quarantine in Alabama by the secretary and the giving of the required notice; the establishment of regulations governing shipments from the quarantined territory to other states, and the giving notice thereof; that one of such regulations provided for the placarding of cars and waybills in cases of such live stock shipments with the words "southern cattle"; and that the defendant received live stock in Alabama and transported them to Tennessee without so placarding its waybill and cars.

A crime can be created only by a public act, and the language of the act must be sufficient to completely declare and define the crime and affix the punishment. It is not competent for Congress to delegate to the President or the head of an executive department the power to declare what facts shall constitute an offence. It is competent for Congress to commit to the executive the power to determine when the occasion, provided by the law itself for its going into effect, has occurred, and whether the facts, which the law makes conditions to its operation or to a partial or temporary suspension of its operation, exist, and also to provide for the details of the law's administration. It is not competent for Congress to intrust to the executive the power to declare by a departmental rule or regulation that to be unlawful, in the sense of criminal, which would otherwise be lawful; nor, itself, to declare a violation of rules or regulations, thereafter to be promulgated by the executive, a criminal offense. The crime must be created by the act of Congress, alone, for the public are not required to look beyond the act in their endeavor to ascertain what is criminal, and the discretion of fixing what facts import criminality is exclusively that of the lawmaker as distinguished from the executive. The effect of departmental regulations, not ratified by act of Congress, is confined to civil matters, and cannot be made the predicate of criminal offenses. These are the principles announced by many cases in the federal courts, some of which are here cited: Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; Caha v. U. S., 152 U. S. 218, 14 Sup. Ct. 513, 38 L. Ed. 415; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; In re

Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; St. Louis, I. M. & S. R. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Red C. Oil Mfg. Co. v. Board of Agriculture (C. C.) 172 Fed. 712; Southern Pac. Co. v. U. S., 171 Fed. 360, 96 C. C. A. 252; U. S. v. Grimaud (D. C.) 170 Fed. 205; U. S. v. Matthews (D. C.) 146 Fed. 306; Dastervignes v. U. S., 122 Fed. 30, 58 C. C. A. 346; U. S. v. Deguirro (D. C.) 152 Fed. 568; U. S. v. Shannon (C. C.) 151 Fed. 863; U. S. v. Maid (D. C.) 116 Fed. 650; U. S. v. Blasingame (D. C.) 116 Fed. 654.

The sixth section of the act in question declares the violation of section 2 and of section 4 of the act to be a misdemeanor as therein stated. Section 4 declares the transportation of live stock from a quarantined territory in one state into another state in a manner not in compliance with the shipping rules and regulations of the Department of Agriculture to be unlawful. The crime, so far as based on section 4, when considered by itself, is defined merely by rules and regulations thereafter to be established by the Department of Agriculture. In the case of United States v. Grimaud (D. C.) 170 Fed. 205, the validity of a law, which provided that violations of rules and regulations to be established by the Secretary of the Interior, with relation to the occupancy and use of forest reservations, should be punishable as a crime, and a regulation of the department thereunder prohibiting the grazing of sheep on such reservation, unless permitted by the secretary, was involved. The court said (page 207):

"There can be no pretense that Congress itself has defined as a crime the act for which defendants are here indicted, namely, grazing sheep, without permission, in a forest reserve. The statute itself does not forbid or make any reference whatever to sheep grazing, nor in the remotest degree suggest that Congress had it at all in mind, and, according to the government's own theory, it did not become a crime until nine years after the passage of the statute, which the government claims made it criminal, and then only because of the promulgation of an administrative rule which it contravenes. The mere statement of the theory, it seems to me, condemns it, and, after much reflection, I have now no hesitancy in holding that the statute, in so far as it affixes punishment to infractions of executive rules and regulations thereafter to be promulgated, is incomplete and wholly inadequate to form the basis of a criminal prosecution."

And again, on page 209, the court said:

"There can be no controversy whatever about the principle itself; the only room for dispute lies in its application. In the case at bar, the statute does not declare the grazing of sheep, without permission, to be a crime, nor does it make the slightest reference to that matter, but declares that whatever the Secretary of the Interior may thereafter prohibit shall be a misdemeanor. Congress merely prescribes a penalty, and then leaves it to the Secretary of the Interior to determine what acts shall be so punishable. Thus it will be seen that the very essence of the alleged crime, namely, what act shall constitute it, is not fixed by Congress, but wholly confided to the discretion of an administrative officer. If this does not necessarily involve a delegation of legislative power, it is difficult to conceive of a statute challengeable on that ground."

In the case of U. S. v. Eaton, 144 U. S. 677, 687, 12 Sup. Ct. 764, 767 (36 L. Ed. 591), the sufficiency of a departmental regulation, requiring the dealer to keep a record sale book and make report of sales to the Commissioner of Internal Revenue, to support a convic-

176 F.—60

tion under a law providing that the department should make all needful regulations to carry out the law, and that all violations of the law should be punished as offenses, was involved. The court said:

"Much more does this principle apply to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. It is a principle of criminal law that an offense which may be the subject of criminal procedure is an act committed or omitted 'in violation of a public law, either forbidding or commanding it.' 4 American & English Encyclopedia of Law, 642; 4 Bl. Com. 5.

"It would be a very dangerous principle to hold that a thing prescribed by the Commissioner of Internal Revenue, as a needful regulation under the oleomargarine act, for carrying it into effect, could be considered as a thing 'required by law' in the carrying on or conducting of the business of a wholesale dealer in oleomargarine, in such manner as to become a criminal offense punishable under section 18 of the act. [Act Aug. 2, 1886, c. 840, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234).]    *    *    *

"Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as to lawfully support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense."

The illegality of the act forbidden by section 4 lies in a nonconformance with department rules and regulations, and is within the influence of the decisions quoted from; and, if the indictment were based solely upon a violation of this section, the demurrer would seem to be well taken.

Section 2, however, forbids the shipment of live stock from a quarantined territory in one state to another state, "except as hereinafter provided." And a violation of section 2 is declared by section 6 to be a misdemeanor, and the punishment, as such, is fixed by that section. Section 2, in connection with section 6, accordingly defines the unlawful act, declares it to be a crime, and fixes the punishment, and this is completely done by the public act itself, without resort to departmental regulations, and is, in this repsect, like that passed upon in the case of In re Kollock, supra. The shipment is declared to be unlawful, however, only, "except as hereinafter provided," and the exception is that, in the event the secretary shall deem the public safety permits, he shall establish rules and regulations, under which live stock may lawfully move from the quarantined territory of one state to another state.

If the statute, in its entirety, be so construed as to make the exception in its application as broad as the prohibition, it would amount to nothing more in substance than the fourth section alone. It would then in one section prohibit all interstate shipments from quarantined territory, and in another permit all such shipments, when made in compliance with the regulations of the department. With that construction, the violation of law must in every instance consist, not in the shipment itself, but in the failure to comply with some departmental regulation relating to it; and the criminal act, if any, created by the statute, would be in effect the violation of a regulation au-

thorized by the act to be made, after its passage, by the department. The act, so construed, would be open to the same constitutional objection as is the fourth section taken by itself.

The exception, however, is not as broad as the prohibition. By section 2 interstate shipments from quarantined territory are forbidden, except as afterwards provided by the act. Congress legislated, having in view the probable occurrence of epidemics of varying seriousness and intensity. The epidemic to be guarded against might in some instances be so severe and the disease of so serious a character as to require the absolute cessation of shipments from the quarantined territory; while, in other instances, the mildness of the disease or the infrequency of the cases might justify continued shipments, but under precautionary measures.

In legislating on the subject, Congress could not have before it the facts relating to each epidemic to be provided for, and could not make rules in advance to fit the exigency of each varying case as it arose. It therefore provided a general prohibition of shipments from quarantined territory, and further provided that the secretary, as each epidemic arose, should have the power, if he determined that the public safety justified it, to permit shipments for certain purposes and under certain conditions to be determined by rules and regulations to be established by him for that specific epidemic.

The act, when so construed, is not the equivalent of a general prohibition against all shipments, accompanied by a general permission of such shipments upon compliance with departmental rules, the effect of which would be to create a crime out of a violation of departmental rules to be afterwards promulgated; but contains a general prohibition, together with a limited and conditional exception, applicable only to such epidemics as are determined by the secretary to be of so mild a character as to permit of shipments under certain safe guards consistent with the public safety. The act confers on the secretary the power to determine in each epidemic (1) whether shipments can be made consistently with public safety at all; and, if so (2), upon what conditions. All epidemics, as to which the secretary fails to make this determination, are governed by the general prohibition of the statute. As to others, the secretary is invested by the act with the power conditionally to suspend the operation of the prohibition by permitting shipments for certain purposes and under certain safeguards formulated by departmental rules. Shipments which fail to comply with such rules are not excepted from the general prohibition of the statute, and become violations of the act under it. As to shipments alone which comply with the regulations of the department, the operation of the act is suspended. Having ascertained that the public safety permits conditional shipments, the secretary has no discretion to withhold permission to make them, but the terms of the act makes it his duty to grant it.

The power of Congress to commit to the President or the head of a department the authority to determine whether facts exist, upon which the operation of a provision of a law is to be suspended in a particular instance or occasion as provided in it, and thereupon to

declare the operation of the law suspended in such instance, has been upheld in the case of Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294. That this is the effect of the power vested in the secretary by the act in question is plain. Section 3 provides "that it shall be the duty of the Secretary of Agriculture, and he is hereby authorized and directed, when the public safety will permit, to make and promulgate rules and regulations which shall permit and govern * * * the method and manner of delivery and shipment of cattle or other live stock from a quarantined state," etc., also to give notice of such rules and regulations. Section 4 provides that live stock may lawfully be moved from quarantined territory in compliance with such rules and regulations, made by the secretary pursuant to section 3 of the act, but not otherwise.

Under this construction, the statute itself, as distinguished from departmental rules and regulations, defines the act made criminal by it, viz., the shipping of live stock from a quarantined territory in one state to another state, and also fixes the punishment to be administered. The statute, therefore, in and of itself, completely creates the offense; the effect of the subsequent provisions, authorizing the secretary to permit shipments when the public safety permits, under certain conditions, constituting merely a suspensory power in specific instances, conditioned upon the observance by the shipper of certain safeguards to be prescribed by the rules of the department.

The statute, so construed, fully informs the public from its own provisions of the character of the act made criminal and of the punishment prescribed therefor, and does not vest in the executive discretion to determine what facts shall constitute a crime, or to make that unlawful and criminal which would otherwise be lawful. It merely permits the executive to determine the existence of a status, to which the act itself attaches the effect of suspending partially and temporarily its own operation, to declare the existence thereof and to execute the law, as prescribed in the act, appropriate to the existence of the status so determined and declared by him. This is properly an executive, and not a legislative, function.

The indictment alleges the establishment of the quarantine and notice thereof to defendant, personally and by publication, as required by law; that rules and regulations permitting shipments from the quarantined territory to other states were established by the secretary, of which notice was also given defendant, personally and by publication, as required by the act; that defendant received for transportation the shipment in question, without having complied with such rules and regulations or some of them. These allegations sufficiently show that the shipment came within the general prohibition of the statute, and was not relieved therefrom by a full compliance with the permissive regulations of the department, the condition upon which, alone, the exception becomes operative.

The effect of amendment No. 2 of order No. 143 of the regulations of the Department of Agriculture was only to modify the regulations of March 22, 1907, constituting original order No. 143, and not to

revoke them; the modification consisting of a revocation of regulations 13 and 14, and a substitute of two new regulations therefor, leaving the regulations, as modified, still effective at the time of the shipment, of which complaint is made.